[No. B189589. Second Dist., Div. Three. Aug. 10, 2007.]

JASON CLARK et al., Plaintiffs and Respondents, v.
FIRST UNION SECURITIES, INC., et al., Defendants and Appellants.

## Counsel

Reed Smith, Margaret M. Grignon, Alisa M. Chevalier, Michele J. Beilke and Zareh Jaltorossian for Defendants and Appellants.

Knapp, Petersen & Clarke and Stephen M. Harris for Plaintiffs and Respondents.

**OPINION**

**ALDRICH, J.—**

## INTRODUCTION

Defendant and appellant Wachovia obtained a trial court ruling that the putative class and class action causes of action brought by plaintiffs and respondents Jason Clark and Robert A. Pool were to be resolved in arbitration. Then, Wachovia obtained a ruling from the arbitrators that these causes of action were not eligible for arbitration. Thereafter, the trial court, on its own motion, reconsidered its first ruling. The trial court issued an order holding that the putative class and class causes of action were to be heard in the trial court. We affirm the trial court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The employment.*

   a. *Clark's contract and the U-4.*

Plaintiff and respondent Jason Clark was hired by defendant and appellant First Union Securities, Inc. (First Union), as an investment consultant candidate.

Clark's position required him to hold a license from the National Association of Securities Dealers, Inc. (NASD).[1] Thus, Clark was required to execute a Securities and Exchange Commission (SEC) approved Uniform Application for Securities Industry Registration or Transfer Form U-4 (Form U-4).[2] Clark executed a Form U-4 on October 28, 1998, and became employed by First Union in November 1998.

The Form U-4 contained the following arbitration provision: "I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the [NASD] as may be amended

---

[1] We note that in a July 12, 2007, e-mail, NASD Chairman and CEO Mary Schapiro announced the decision to use the name Financial Industry Regulatory Authority, or FINRA, for the new regulatory organization formed from the consolidation of the NASD and the New York Stock Exchange Regulation, Inc. (See 72 Fed.Reg. 42190 (Aug. 1, 2007).)

[2] (15 U.S.C. § 78o(b)(8); 17 C.F.R. § 240.15b7-1 (2006); Cal. Code Regs., tit. 10, § 260.210, subd. (a); *Desiderio v. National Ass'n. of Securities Dealers* (2d Cir. 1999) 191 F.3d 198, 201.)

from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction."

The arbitration rules (Rules) promulgated by the NASD are contained in the NASD Code of Arbitration Procedure (NASD Code).

b. *The pertinent rules in the NASD Code.*

Rule 10331 provides that the NASD Code "shall be deemed a part of and incorporated by reference in every agreement to arbitrate under the Rules of the [NASD] . . . ."

The following are the other Rules relevant to the matter before us:

Rule 10101 states in part: "This Code of Arbitration is prescribed and adopted . . . for the arbitration of any dispute, claim, or controversy . . . arising out of the employment or termination of employment of associated person(s) with any member . . . ."

Rule 10201 states in part: "[A] dispute, claim, or controversy eligible . . . between or among members and/or associated persons, and/or certain others, . . . arising out of the employment or termination of employment of such associated person(s) with such member, shall be arbitrated under this Code . . . ."

Rule 10301 states in part: "Any dispute, claim, or controversy . . . arising in connection with the business of such member or in connection with the activities of such associated persons shall be arbitrated under this Code, as provided by any duly executed and enforceable written agreement or upon the demand of the customer. . . ."

■ Subdivision (d) of Rule 10301 is entitled "Class Action Claims." It makes *ineligible* for arbitration class actions claims submitted as a class action and claims filed by members of a putative or certified class action "if the claim is encompassed by a putative or certified class action filed in federal or state court, or is ordered by a court to an arbitral forum . . . ." (Rule 10301(d)(1), (2).) A party or class member may be compelled to arbitrate if class certification is denied, the class is decertified, the party or class member is excluded from the class by the court or the party or class member elects "not to participate in the putative or certified class action, or, if applicable, has complied with any conditions for withdrawing from the class prescribed by the court." (Rule 10301(d)(2), (3).)

█ Pursuant to Rule 10301(d)(2) the arbitration panel may decide if a dispute is "encompassed by a putative or certified class action." However, "[e]ither party may elect instead to petition the court" to resolve such disputes. (*Ibid.*) "Any such petition to the court must be filed within ten business days of receipt of notice that the Director of Arbitration is referring the dispute to a panel of arbitrators." (*Ibid.*) This rule also prohibits submission of class claims to "an arbitral forum not sponsored by a self-regulatory organization for classwide arbitration." (*Ibid.*)

Rule 10301(d)(4) states that "No member or associated person shall be deemed to have waived any of its rights under this Code or under any agreement to arbitrate to which it is party except to the extent stated in this paragraph."[3]

Rule 10305(a) states: "At any time during the course of an arbitration, the arbitrators may either upon their own initiative or at the request of a party, dismiss the proceeding and refer the parties to their judicial remedies, or to any dispute resolution forum agreed to by the parties, without prejudice to any claims or defenses available to any party."

---

[3] Rule 10301(d) reads:

"Class Action Claims

"(1) A claim submitted as a class action shall not be eligible for arbitration under this Code at the Association.

"(2) Any claim filed by a member or members of a putative or certified class action is also ineligible for arbitration at the Association if the claim is encompassed by a putative or certified class action filed in federal or state court, or is ordered by a court to an arbitral forum not sponsored by a self-regulatory organization for classwide arbitration. However, such claims shall be eligible for arbitration in accordance with paragraph (a) or pursuant to the parties' contractual agreement, if any, if a claimant demonstrates that it has elected not to participate in the putative or certified class action or, if applicable, has complied with any conditions for withdrawing from the class prescribed by the court.

"Disputes concerning whether a particular claim is encompassed by a putative or certified class action shall be referred by the Director of Arbitration to a panel of arbitrators in accordance with Rule 10302 or Rule 10308, as applicable. Either party may elect instead to petition the court with jurisdiction over the putative or certified class action to resolve such disputes. Any such petition to the court must be filed within ten business days of receipt of notice that the Director of Arbitration is referring the dispute to a panel of arbitrators.

"(3) No member or associated person shall seek to enforce any agreement to arbitrate against a customer, other member or person associated with a member who has initiated in court a putative class action or is a member of a putative or certified class with respect to any claims encompassed by the class action unless and until: (A) the class certification is denied; (B) the class is decertified; (C) the customer, other member or person associated with a member is excluded from the class by the court; or (D) the customer, other member or person associated with a member elects not to participate in the putative or certified class action or, if applicable, has complied with any conditions for withdrawing from the class prescribed by the court.

"(4) No member or associated person shall be deemed to have waived any of its rights under this Code or under any agreement to arbitrate to which it is party except to the extent stated in this paragraph."

■ Rule 10314(d) permits persons to be joined in a single arbitration if they assert any rights to relief when there are common factual or legal issues.[4]

Rule 10324 provides that "The arbitrators shall be empowered to interpret and determine the applicability of all provisions under this Code and to take appropriate action to obtain compliance with any ruling by the arbitrator(s). Such interpretations and actions to obtain compliance shall be final and binding upon the parties." Additionally, arbitrators are "empowered to award any relief . . . available in court under the law" (Rule 10214) and all awards rendered by an arbitrator are "final and not subject to review or appeal" (Rule 10330(b)).

### c. *The purpose of Rule 10301(d).*

Rule 10301(d) was adopted by the SEC in 1992. The impetus for the rule was a suggestion that procedures be developed "that would give investors access to the courts in appropriate cases . . . ." (Jean I. Feeney, Assistant General Counsel, NASD interpretive letter to Cliff Palefsky, Nat. Employment Lawyers Assn., Sept. 21, 1999 </http://www.nasd.com/ RulesRegulation/PublicationsGuidance/InterpretiveLetters/ProceduralRules/ NASDW_002521/> [as of Aug. 10, 2007].) "Although Rule 10301(d) was designed to address investor class actions filed under Rule 23 of the Federal Rules of Civil Procedure, the underlying rationale would also cover other types of class actions." (*Ibid.*)

■ The SEC issued a public notice in connection with the approval of Rule 10301(d). In this 1992 approval order, the SEC gave notice that under the new provision class actions were excluded from arbitration. The order stated that arbitration agreements cannot require arbitration of class action disputes and such contracts are outside the scope of arbitration contracts. In part, the approval order stated, that "paragraph (d)(3) [of Rule 10301] clearly prohibits NASD members from enforcing existing arbitration contracts to defeat class certification of participation. [¶] . . . [T]he NASD believes, and

---

[4] Rule 10314(d) reads in part: "Joinder and Consolidation—Multiple Parties

"(1) Permissive Joinder. All persons may join in one action as claimants if they assert any right to relief jointly, severally, or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any questions of law or fact common to all these claimants will arise in the action. All persons may be joined in one action as respondents if there is asserted against them, jointly or severally, any right to relief arising out of the same transaction, occurrence, or series of transactions or occurrences and if any questions of law or fact common to all respondents will arise in the action. A claimant or respondent need not assert rights to or defend against all the relief demanded. Judgment may be given for one or more of the claimants according to their respective rights to relief, and against one or more respondents according to their respective liabilities."

the Commission agrees, that the judicial system has already developed the procedures to manage class action claims. Entertaining such claims through arbitration at the NASD would be difficult, duplicative and wasteful." (57 Fed.Reg. 52659, 52660–52661 (Nov. 4, 1992).)[5]

### 2. *Procedure.*

#### a. *The complaint.*

Clark filed his initial complaint on September 18, 2002. The complaint alleged eight causes of action arising from his employment. The lawsuit alleged the misconduct violated a number of California Labor Code and employment laws. The allegations of wrongdoing ranged from misrepresentations regarding the sale of securities, to the failure to pay wages and to reimburse for business expenses. The first six causes of action were personal to Clark. The seventh cause of action was brought by Clark individually and on behalf of others similarly situated. It alleged unfair business practices (Bus. & Prof. Code, § 17200, the unfair competition law (UCL)) and sought restoration of all sums wrongfully obtained by First Union as well as injunctive relief. The eighth cause of action was for declaratory relief.

First Union filed a motion to compel arbitration of all of Clark's causes of action, except for the injunctive and declaratory relief requests in the seventh and eighth causes of action.[6] First Union argued that because all allegations arose out of Clark's employment or termination of employment, they must be resolved in arbitration pursuant to the arbitration provision in the Form U-4 and the NASD Code. First Union did not cite Rule 10301(d).

In opposition, Clark contended NASD arbitration procedures were procedurally and substantively unconscionable. (*Armendariz v. Foundation Health Psychare Services, Inc.* (2000) 24 Cal.4th 83 [99 Cal.Rptr.2d 745, 6 P.3d 669].) Additionally, citing NASD Rule 10301(d), Clark argued that the unfair practice cause of action was asserted on behalf of all Wachovia employees, and thus, was not subject to arbitration. Clark stated, "[t]he only forum for the unfair practice claims is a civil lawsuit. The NASD arbitration rules do not even permit putative or class claims to be arbitrated."

---

[5] The NASD is proposing a reorganization and revision of the NASD Code. As proposed, Rule 10301(d) would become rule 12204. The new proposal revamps the language, but is not intended to make a substantive change. (72 Fed.Reg. 4574, 4580–4581 (Jan. 31, 2007).)

[6] First Union conceded that "[u]nder California law, the portions of claims that seek injunctive and declaratory relief under [the UCL] are not arbitrable. (*Broughton v. Cigna Healthplans* [(1999)] 21 Cal.4th 1066, 1079–80 [90 Cal.Rptr.2d 334, 988 P.2d 67].)"

In its reply brief, First Union addressed unconscionability, but failed to directly address Clark's argument that the NASD Code did not permit arbitration of putative or class claims.[7]

On January 13, 2003, the trial court granted the motion for all claims "except the seventh and eighth causes of action, for the limited claims as stated on the record."

A first amended complaint was filed on September 19, 2003, on behalf of Clark and Pool. The complaint was filed against First Union and its successor in interest, defendant and appellant Wachovia Securities, Inc., hereinafter collectively referred to as Wachovia.[8] As amended, the complaint alleged nine causes of action as an "unlimited civil case . . . [and] class action in part . . . ." In essence, Clark alleged Wachovia had committed the same acts which were alleged as unfair and fraudulent business and employment practices as previously identified.

The first six causes of action were personal to Clark.

The eighth cause of action was brought by Clark in his individual and representative capacity on behalf of members of the general public for declaratory relief. Clark sought a declaration that a number of Wachovia's business practices and policies were unfair business practices pursuant to the UCL.

The ninth cause of action was brought by Clark on behalf of a class of similarly situated employees for unfair practices under the UCL. As amended thereafter by stipulation, the ninth cause of action encompassed all current and former employees, those who had signed a Form U-4, as well as those who had not signed a Form U-4.

Pool is mentioned only in the seventh cause of action for unlawful, unfair and/or fraudulent business practices brought on behalf of Clark and Pool in their representative capacity. In addition to other allegations, the seventh cause of action alleged that Wachovia employees were not paid wages due, were not paid mandatory minimum wage, were forced to sign promissory

---

[7] Unconscionability continued to be an issue addressed by the parties and is raised on appeal by Clark and plaintiff and respondent Robert A. Pool. In light of our holding, we need not address this issue and have not detailed the parties' discussions below.

[8] Clark was actually hired by First Union and Everen Securities, Inc., Wachovia Securities, LLC, is the successor in interest to Wachovia Securities, Inc., which in turn is the successor in interest to First Union Securities, Inc. and Everen Securities, Inc. Wachovia Securities Financial Network, LLC, and Wachovia Capital Markets, LLC, are related entities. Hereinafter, and unless otherwise significant, we refer to all of these entities, which appear as defendants and appellants, collectively as Wachovia.

notes that contained illegal confessions of judgment, were not reimbursed for expenses, and were required to bear a loss that was not the result of culpable negligence or willful misconduct. Clark limited his involvement in this cause of action "to those members of the general public who do not have arbitration agreements with Wachovia . . . ." Pool alleged he was acting solely on behalf of the general public and he sought to terminate Wachovia's misconduct and to obtain restitution of the sums Wachovia owed the members of the general public.[9]

### b. *The October 2003 motion to compel arbitration.*

On October 14, 2003, Wachovia filed a motion to compel arbitration of all causes of action, except the requests for injunctive or declaratory relief, which Wachovia requested be stayed. Wachovia argued that Clark's individual causes of action had to be arbitrated as the trial court had already made that decision in ruling on the first motion. With regard to the UCL claims for restitution and disgorgement brought by Clark in his representative capacity, Wachovia argued they must be arbitrated because Clark could not avoid his contractual obligations merely by bringing suit in a representative capacity. Wachovia asserted that representative claims, brought on behalf of all current and former employees, were arbitrable as they arose out of the employment relationship. Wachovia did *not* argue that only the arbitrators had the jurisdiction to decide arbitrability. Wachovia argued Pool stood in the shoes of those he represented, and thus, the cause of action he brought had to be arbitrated.

Clark and Pool opposed the motion. Citing Rule 10301(d) of the NASD Code, Clark and Pool argued the representative causes of action could not be part of a NASD arbitration. Clark and Pool stated, "Wachovia advances the mind-boggling position that it can compel arbitration of claims on behalf of a class or putative class even though the parties to the contract agreed that they would not seek arbitration of such matters." Clark and Pool asserted that the agreement to arbitrate specifically made *ineligible* claims that were brought on behalf of a class or a putative class. Pool suggested that the cause of action brought by him was not subject to arbitration because he had not signed an arbitration agreement. In supplemental papers, Clark and Pool argued joinder was irrelevant because the trial court could not force them to arbitrate causes of action which they had not agreed to arbitrate.

Wachovia filed its reply arguing that "individuals pursuing claims for restitution or disgorgement on behalf of themselves or others are subject to arbitration[]" regardless of the availability of class action procedures.

---

[9] Subsequent information revealed that Pool is an attorney, he has never been employed in the securities industry, and he has never entered into an arbitration agreement with any company in the securities industry.

Wachovia further contended that representative causes of action were not identical to class actions and that the NASD Code did not prohibit claims for restitution on behalf of a group unless there was a certified class. Wachovia claimed that because Clark and Pool's representative causes of action had common questions of law or fact, they could be joined in one arbitration. (Rule 10314(d).) Citing Rule 10301(d), Wachovia stated that it would seek an order "compelling arbitration of claims that are not encompassed by a class action or claims of individuals who have been excluded from a class. Rule 10301(d) also provides that parties to an arbitration agreement may submit any disputes 'concerning whether a particular claim is encompassed by a putative or certified class action' to either the Director of Arbitration or to a court with jurisdiction over the putative or certified class action. The NASD expressly permits parties to determine whether such claims are contained within the purported class action and contemplates that a court with jurisdiction may remove claims from an alleged class. . . . Each putative representative or class member who has signed a Form U-4 has already contractually agreed to submit his or her individual claims to binding arbitration."

As clarified in a December 29, 2003 order, the trial court granted the motion, stating that the following must be brought in arbitration with the NASD: "[c]laims for restitution, damages or disgorgement contained in the seventh and ninth causes of action alleged on behalf of any individual who has signed a Form U-4 . . . ." The claims in the seventh and ninth causes of action alleged as to those individuals who had not signed a Form U-4 and the claims for injunctive relief were stayed pending resolution of the arbitration and the resolution of a related case.

> c. *Actions in the NASD arbitration and settlement of Clark's individual causes of action.*

Clark filed a statement of claim in arbitration, which was thereafter amended. As amended, the eighth claim was a UCL representative and class claim brought by Clark on his behalf and on behalf of members of the general public. The ninth claim was a UCL claim brought on behalf of a class of employees who had signed the Form U-4 and thus were similarly situated to Clark.

On May 21, 2004, Wachovia filed in the NASD arbitration a motion to dismiss the eighth and ninth claims. Wachovia stated that the eighth claim was a representative action, the ninth was brought on behalf of a putative class, and the NASD Code did "not permit [Clark] to use the procedural device of a class action or representation action to assert these claims. NASD Code of Arb. Proc. Rule 10301(d)." Rather, according to Wachovia, the NASD rules required Clark, who had an agreement to arbitrate, to identify

the individuals seeking restitution and then partake in arbitration through joinder procedures. Wachovia objected "to Clark's attempt to bring these two claims to the NASD in violation of the NASD Rules of Arbitration Procedure." In a subsequent pleading, Wachovia stated, "Whether the Panel dismisses the two claims . . . , the decision will have no impact on Clark's state court proceedings, and Clark's attempt to reargue his position here is irrelevant and inappropriate."

Also on May 21, 2004, Clark filed a motion in the NASD arbitration requesting the panel decide "whether or not the eighth and ninth claims for relief, on behalf of the general public and on behalf of a class of similarly situated individuals, are eligible for arbitration." Clark requested the arbitrators remand the two claims to the trial court.

On August 19, 2004, the NASD arbitration panel granted Wachovia's motion and dismissed the eighth and ninth representative causes of action, concluding they were "not eligible for arbitration under the NASD rule 10301(d)."[10]

After the arbitrators' August 1994 NASD ruling, Clark settled his individual claims and dismissed the first through sixth causes of action. The settlement did not resolve the causes of action brought by Clark and Pool in their representative capacities.

#### d. *Clark and Pool's motion for reconsideration.*

The parties appeared on July 18, 2005, for a status conference in which they discussed, among other topics, the NASD arbitrators' ruling. On its own motion, the trial court decided to reconsider its December 29, 2003, ruling that had referred to arbitration the class and representative causes of action. The trial court invited Clark and Pool to file a motion for reconsideration.

Clark and Pool subsequently filed a motion for reconsideration. Citing Rule 10301(d), Clark and Pool argued that the trial court's December 29, 2003, ruling was erroneous because class and representative claims were outside the scope of the arbitration agreement.

In its opposition, Wachovia contended that the trial court's prior ruling was correct. Wachovia argued Clark could not evade his contractual obligations to arbitrate by acting as a representative on behalf of others similarly situated

---

[10] The ruling read in pertinent part, "[Wachovia's] Motion to Dismiss Claims in Second Amended Statement of Claim . . . the panel grants such motion. Specifically, issues 8 and 9 shall be dismissed. . . . Such issues dismissed are not eligible for arbitration under the NASD rule 10301(d)."

and plaintiffs cannot "circumvent their contractual agreements to arbitrate by styling their claims as a class action . . . ." Wachovia stated that the arbitrators and not the trial court was required to interpret and determine the applicability of Rule 10301(d), the arbitrators had determined that issue by dismissing those claims, and the dismissal was final and binding pursuant to Rule 10324.

On January 18, 2006, the trial court entered an order granting Clark and Pool's motion for reconsideration. The trial court found that "Rule 10310(d) establishes that Plaintiffs have no obligation to arbitrate any claims they have on behalf of a class of similarly situated U4 signatories." Additionally, the trial court held that the NASD arbitrators' decision did not preclude reconsideration of the trial court's prior order: "The . . . NASD ruling is consistent with this court's decision, upon reconsideration of its arbitration order, to deny Wachovia's arbitration motions."

Wachovia appeals from the January 18, 2006 order, construing it as a denial of its motion to compel arbitration. (Code Civ. Proc., § 1294, subd. (a) [party may appeal from order denying arbitration].) Wachovia requests that we reverse the order and direct the trial court to dismiss the seventh and ninth causes of action. We affirm.

## DISCUSSION

### 1. *Introduction.*

Clark has settled his personal causes of action. The parties agree that the eighth cause of action for injunctive relief is not subject to arbitration. (*Broughton v. Cigna Healthplans, supra,* 21 Cal.4th 1066; *Cruz v. PacificCare Health Systems, Inc.* (2003) 30 Cal.4th 303, 315 [133 Cal.Rptr.2d 58, 66 P.3d 1157].) Thus, the only causes of action remaining are the seventh and ninth causes of action, the representative causes of action.

Wachovia raises procedural arguments hoping we will foreclose resolution of these two representative causes of action. The main issue we must address is whether the trial court could reconsider its December 29, 2003 ruling.[11]

### 2. *Standard of review.*

Because there are no disputed facts, we review a trial court's ruling on a motion to compel arbitration de novo. (*Boucher v. Alliance Title Co., Inc.*

---

[11] The parties do not address the applicability of Proposition 64 to this case. Thus, we have not addressed the issue.

(2005) 127 Cal.App.4th 262, 266–267 [25 Cal.Rptr.3d 440]; *Hartnell Community College Dist. v. Superior Court* (2004) 124 Cal.App.4th 1443, 1448–1449 [22 Cal.Rptr.3d 410].)

Likewise, the issues relating to the proper roles of the arbitrator and trial court in interpreting the NASD rules and the finality of the arbitrator's decision are questions of law, subject to de novo review. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956].) To the extent we rely upon SEC's interpretation of the rules it promulgated, we give deference to the agency's interpretation of those rules. (*Krull v. S.E.C.* (9th Cir. 2001) 248 F.3d 907, 911–912; cf. *E. I. du Pont de Nemours & Co. v. Collins* (1977) 432 U.S. 46, 54–55 [53 L.Ed.2d 100, 97 S.Ct. 2229] ["construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong"].)

■ We are mindful that " ' " '[d]oubts as to whether an arbitration clause applies to a particular dispute are to be resolved in favor of sending the parties to arbitration[.]' " ' [Citation.] [However,] there exists no public policy favoring arbitration of disputes which the parties have not agreed to arbitrate. [Citation.]" (*Zavala v. Scott Brothers Dairy, Inc.* (2006) 143 Cal.App.4th 585, 590 [49 Cal.Rptr.3d 503].)

### 3. *The trial court had the jurisdiction to reconsider its prior ruling.*

■ Wachovia's contention is unpersuasive that the trial court could not reconsider its prior ruling.

"All courts have inherent powers that enable them to carry out their duties and ensure the orderly administration of justice. The inherent powers of courts are derived from California Constitution, article VI, section 1, and are not dependent on statute. (*Le Francois v. Goel* [(2005)] 35 Cal.4th [1094,] 1101–1102 [29 Cal.Rptr.3d 249, 112 P.3d 636]; *Walker v. Superior Court* (1991) 53 Cal.3d 257, 266–267 [279 Cal.Rptr. 576, 807 P.2d 418]; *Case v. Lazben [Financial Co.* (2002)] 99 Cal.App.4th [172,] 185 [121 Cal.Rptr.2d 405]; *In re Amber S.* [1993] 15 Cal.App.4th [1260,] 1264–1265 [19 Cal.Rptr.2d 404].)" (*Nickolas F. v. Superior Court* (2006) 144 Cal.App.4th 92, 110 [50 Cal.Rptr.3d 208].) Consistent with these powers, the trial court may, on its own motion reconsider its interim orders, after providing the parties with notice and the opportunity to be heard. (*Le Francois v. Goel, supra,* at pp. 1104–1108.)

Wachovia argues that once the arbitrators dismissed the representative claims, that decision was final and binding and thus, the trial court was foreclosed from reviewing its own prior ruling to send the two representative causes of action to arbitration. Wachovia asserts that because Clark settled his individual causes of action, once the NASD panel dismissed the two representative claims, "[t]here are no other claims or issues pending in the NASD, and the arbitration proceedings have ended. The NASD's decision is final and binding under the parties' agreement and California law, and Clark has not challenged that decision under [Civil Code] sections 1286.2 and 1286.6. Accordingly, it is not reviewable."[12]

However, Wachovia's interpretation ignores the question before the arbitrators. The arbitrators were asked to decide *if* they could hear the two representative claims. The arbitrators answered "no," by holding as Clark had urged, that these two claims were "ineligible" for arbitration. Unlike other dismissals, the arbitrators' decision did not dispose of the two claims nor foreclose the trial court from considering them. Rather, the arbitrators concluded they were not "eligible" for arbitration.

The fact that the arbitrators did not remand the matter to the trial court does not alter this conclusion. The arbitrators decided that they did not have the authority under the Code to consider the issues. (Compare with *Allstate Ins. Co. v. Superior Court* (2006) 142 Cal.App.4th 356 [48 Cal.Rptr.3d 266].) Thus, the trial court was free, on its own motion, to consider if it had such power.[13]

Further, Rule 10305 permitted, but did not mandate the arbitrators to refer the two dismissed claims back to the trial court.

Wachovia also contends the arbitrators, and not the trial court, should determine the meaning and applicability of Rule 10301(d). In raising this contention, Wachovia points to Rule 10324, *Howsam v. Dean Witter Reynolds, Inc.* (2002) 537 U.S. 79 [154 L.Ed.2d 491, 123 S.Ct. 588] (*Howsam*) and

---

[12] Wachovia cites, among others, *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 11 [10 Cal.Rptr.2d 183, 832 P.2d 899] (with few exceptions, arbitrator's decision cannot be reviewed for error of fact or law), Code of Civil Procedure sections 1286.2 and 1286.6, *Paperworkers v. Misco, Inc.* (1987) 484 U.S. 29, 36 [98 L.Ed.2d 286, 108 S.Ct. 364] ("The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract."), Rule 10324 (arbitrators empowered to interpret the Code's provisions and such interpretations are binding upon parties), Rule 10330(b) (all awards are deemed final and not subject to review or appeal), and Rule 10214 ("The arbitrator(s) shall be empowered to award any relief that would be available in court under the law.").

[13] At the time, the injunctive and declaratory relief causes of action were still pending before the trial court.

*Green Tree Financial Corp. v. Bazzle* (2003) 539 U.S. 444 [156 L.Ed.2d 414, 123 S.Ct. 2402] (*Green Tree*). In light of the fact that both the trial court and the arbitrators reached the same result, i.e., that the two representative causes of action were "ineligible" for arbitration, even if Wachovia is correct, reversal would not be necessary.

In any event, Rule 10324 is a general provision applying to all Rules. It states that the arbitrators are empowered to interpret the applicability of the Code's provisions. However, Rule 10301(d) is specific to putative and certified class claims. Rule 10301(d)(2) permits either the court *or* the arbitrators to decide if claims are "encompassed by a putative or certified class action . . . ." Thus, the trial court had the authority to make the arbitrability decision.

Wachovia's reliance on *Howsam* and *Green Tree* also is unwarranted as they do not address situations similar to the one before us.

In *Howsam, supra,* 537 U.S. 79, the United States Supreme Court concluded the arbitrator was to decide if the then existing NASD six-year limitations period contained in Rule 10304 (1984) made a dispute ineligible for arbitration. In reaching this conclusion, *Howsam* likened the limitations rule to procedural rules that were to be decided by an arbitrator and not the court (*Howsam, supra,* at p. 85), rather than to other arbitrability gateway issues that are for a court (*id.* at p. 83).

*Green Tree, supra,* 539 U.S. at page 448, examined an arbitration provision stating that " 'All disputes, claims, or controversies arising from or relating to this contract or the relationships . . . shall be resolved by binding arbitration . . . .' " (Italics omitted.) The court had to address whether this provision was silent on classwide arbitration. (*Id.* at pp. 447, 450.) The California Supreme Court recently has summarized what can be gleaned from *Green Tree* as follows: "Reading the plurality opinion together with Justice Stevens's [concurring and dissenting] opinion, the most that might be derived from [*Green Tree*] is a narrow holding: that when the question of whether a class action arbitration is available depends on whether or not the arbitration agreement is silent on the matter or expressly forbids class action arbitration, then it is up to the arbitrator, not the court, to determine whether the arbitration agreement is in fact silent." (*Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, 170–171 [30 Cal.Rptr.3d 76, 113 P.3d 1100].)[14]

---

[14] *Discover Bank v. Superior Court, supra,* 36 Cal.4th 148, addressed the validity of a provision in an agreement between a consumer and a credit card company forbidding classwide arbitration. (*Id.* at p. 152.) The Supreme Court held, in part, that in some circumstances, class action waivers in consumer contracts of adhesions are unenforceable. (*Id.* at p. 153.)

Thus, neither *Howsam* nor *Green Tree* discussed contractual provisions similar to Rule 10301(d) where the arbitrator *and* the court had the authority to decide arbitrability. The gateway issue to be decided was not a procedural one like that in *Howsam* and, unlike *Green Tree,* the arbitration clause before us was not silent on whether there could be arbitration of putative and class actions.

We reject Wachovia's suggestion that because the arbitrators did not explicitly refer the two representative causes of action back to the trial court that the arbitrators had impliedly concluded that no class action causes of action can be asserted in any forum. The arbitrators were not called upon to make that decision and such a result contravenes the NASD Code and the intent of Rule 10301(d).

*4. Wachovia's other arguments are not persuasive.*

Wachovia cites a number of cases suggesting they stand for the proposition that "the absence of a class arbitration *remedy* does not defeat an agreement to arbitrate all claims." Wachovia weaves into its discussion the statement that "[s]imply put, both Clark and the putative class members are required to arbitrate any and all employment claims against Wachovia." The cases Wachovia cites are inapplicable and they do not stand for the proposition articulated by Wachovia.

The arbitration agreement before us did not include an agreement to arbitrate all claims. Rather, it specifically made *in*arbitrable putative class and certified class action causes of action. Rule 10301(d) specifically states that claims "submitted as a class action shall not be eligible for arbitration under this Code at the Association. [¶] . . . Any claim filed by a member or members of a putative or certified class action is also ineligible for arbitration . . . ." (Rule 10301(d)(1), (2); see *Coheleach v. Bear, Stearns & Co., Inc.* (S.D.N.Y. 2006) 440 F.Supp.2d 338 [putative class actions are outside the scope of the Form U-4].) Wachovia is bound by this rule. As the SEC approval order confirmed, Rule 10301(d) was designed to put class and putative class actions into the forum that could handle them—the court. As the 1992 approval order states, the NASD Code's arbitration requirement was never meant to apply to putative or certified class actions. "Entertaining such claims through arbitration at the NASD would be difficult, duplicative and wasteful." (57 Fed.Reg. 52659, 52661, *supra.*)

The cases cited by Wachovia, which we discuss below, do not address circumstances where the contract made inarbitrable putative and certified class

action claims, such as the contract in issue here. These cases cannot be used for the broad proposition that it is permissible to preclude trial court's from considering putative and class issues, which is the result urged by Wachovia.

In *Cruz v. PacifiCare Health Systems, Inc., supra,* 30 Cal.4th 303, an enrollee in a health care plan alleged causes of action for unfair competition (UCL, Bus. & Prof. Code, § 17200), false advertising (Bus. & Prof. Code, § 17500), violation of the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.), and unjust enrichment. (*Cruz, supra,* at p. 308.) *Cruz* held that because the requests for injunctive relief were designed to benefit the public, they were not arbitrable. However, the requests for damages (restitution, disgorgement, and unjust enrichment) were arbitrable, even if brought on behalf of others because they were similar to damages. (*Id.* at p. 320.) The court specifically did *not* address the enrollee's argument that his monetary equitable relief claims should not be arbitrated because they were outside the scope of the arbitration agreement. *Cruz* stated in the last paragraph of the majority opinion: "Although [the enrollee's] monetary equitable relief claims are not inherently inarbitrable, he contends . . . that the arbitration agreement should not be enforced for other reasons, such as because his claims are outside the scope of the arbitration agreement and because the agreement is unconscionable. The trial court . . . did not address these contentions. These objections . . . may be reasserted on remand." (*Id.* at p. 321.)

In *Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906 [103 Cal.Rptr.2d 320, 15 P.3d 1071], a home mortgagor sought to certify a nationwide class action. (*Id.* at p. 912.) The underlying mortgages all contained a choice-of-law provision stating that any litigation was controlled by federal and the law of the state where the secured property was located. (*Ibid.*) The Supreme Court set forth a "framework for evaluating the basic choice-of-law and conflict of laws issues that must be resolved when certification of a nationwide or multistate class action is sought . . . ." (*Id.* at p. 928.)

In *Net2Phone, Inc. v. Superior Court* (2003) 109 Cal.App.4th 583 [135 Cal.Rptr.2d 149], a private plaintiff who was not a party to a service contract brought an action as a private attorney general under the UCL against an internet telecommunications service provider. (109 Cal.App.4th at pp. 586–587.) *Net2Phone* held that unlike a public prosecutor, this private plaintiff was bound by a forum selection clause in the service contract just as the customers would be had they filed the lawsuit themselves. (*Id.* at pp. 585, 587.) The majority reached this conclusion even though the state where the

case was to be tried (New Jersey) would not allow an uninjured private plaintiff to bring such a representative action. The majority reasoned, in part, that New Jersey provided injured parties the ability to bring actions in that state. (*Id.* at p. 590.)

Accordingly, Wachovia's reliance upon *Cruz v. PacifiCare Health Systems, Inc., supra,* 30 Cal.4th 303, *Washington Mutual Bank v. Superior Court, supra,* 24 Cal.4th 906, and *Net2Phone Inc. v. Superior Court, supra,* 109 Cal.App.4th 583, is unavailing. These three cases do not address contracts where putative and class action claims are made *in*arbitrable by the parties' contract.

Lastly, Wachovia's states "parties may enter into enforceable agreements to resolve their disputes in certain arbitral forums, or in certain judicial forums that preclude class remedies. Such agreements are the functional equivalent of a waiver of class action lawsuits. By dismissing the class claims, the arbitrators determined that Rule 10301(d) functioned as the equivalent of a class action waiver . . . . " For this proposition, Wachovia cites *Discover Bank v. Superior Court, supra,* 36 Cal.4th 148 (see fn. 14, *ante*), and *America Online, Inc. v. Superior Court* (2001) 90 Cal.App.4th 1 [108 Cal.Rptr.2d 699] (enforcement of contractual forum selection and choice of law clauses functional equivalent of a contractual waiver of consumer protection and thus, prohibited by California law and forum selection clause unenforceable because rights of California consumers would be substantially diminished if forced to litigate in Virginia).

██ However, this speculative statement contradicts the clear reading of Rule 10301(d), which provides a forum for putative and class claims in the trial court, and Rule 10301(d)(4), which limits waivers to those that are expressed in Rule 10301(d)(4). We will not assume that the arbitrators would turn the Rule on its head in the fashion suggested by Wachovia. Further, the arbitrators were not called upon to decide if there was a class action waiver.

Simply put, there was no agreement between the parties, nor an intent by the SEC through its Code, that putative and certified class claims would have no forum for resolution.

The trial court did not err in granting the motion for reconsideration.

## DISPOSITION

The order is affirmed. Wachovia is to pay all costs on appeal.

Klein, P. J., and Croskey, J., concurred.