[No. B172881. Second Dist., Div. Eight. Sept. 15, 2005.]

EATON HYDRAULICS INC., Plaintiff and Appellant, v. CONTINENTAL CASUALTY COMPANY et al., Defendants and Respondents.

## COUNSEL

Cooper & Walinski, Joseph P. Thacker, John K. Nelson, David Rodman Cooper; Jenkens & Gilchrist, John F. Cermak, Jr., and Sonja A. Inglin for Plaintiff and Appellant.

Cortner McNaboe Colliau & Elenius and Jeffrey T. Woodruff for Defendants and Respondents.

## OPINION

**BOLAND, J.—**

### SUMMARY

In this insurance coverage case, the trial court erred in concluding the insured's suit against an excess insurer was barred by the four-year statute of limitations. Under settled principles, the statute of limitations in a general liability insurance coverage case accrues when the insurer refuses to defend the insured in the underlying litigation. Since the duty to defend is continuing, the statute is tolled until the underlying action is terminated by final judgment—in this case, August 2, 2000. The fact that the insured sued its primary insurers in 1996, designating "excess insurers" as Doe defendants, has no bearing on the accrual or tolling of the statute of limitations applicable to an excess insurer who was never identified or served in the 1996 lawsuit.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 28, 2001, Eaton Hydraulics Inc. filed this lawsuit against its insurers, including Continental Casualty Company and CNA Casualty of California (collectively, CNA). CNA is one of Eaton's excess or umbrella insurers. The suit alleges that Eaton's primary and umbrella insurers refused to defend and indemnify Eaton in connection with underlying environmental claims and a resulting lawsuit brought against Eaton and others by federal and state governmental entities. The environmental claims arose in the early 1990's, and culminated in a lawsuit filed against Eaton and others in 1999, followed by a global settlement embodied in a consent decree in August 2000.

CNA demurred to Eaton's first amended complaint, contending it was barred by the four-year statute of limitations. CNA asserted the statute began to run no later than April 11, 1996, when Eaton sued its primary insurers and included its excess insurers as Doe defendants. The trial court agreed. To facilitate an analysis of the statute of limitations issue, we first summarize the environmental claims and lawsuit which generated Eaton's current lawsuit, then turn to the April 1996 lawsuit Eaton filed against its primary insurers, and finally describe the proceedings in this case.

### A.  *United States v. ITT Industries*

Beginning in 1991, the United States Environmental Protection Agency (EPA) notified owners and operators of 40 facilities in the vicinity of Glendale of their potential liability for soil and groundwater contamination under the Comprehensive Environmental Response, Compensation, and Liability Act. Eaton operated one of these facilities. From 1991 through 1997, the EPA issued various administrative notices and orders (administrative enforcement proceedings or EPA claims).[1] The administrative enforcement proceedings involved the liability of Eaton and other potentially responsible parties for response costs incurred by the government in connection with contamination at the Glendale sites, the conduct and design of remedial action, payment of EPA's oversight costs, and so on.

In 1999, the EPA claims culminated in a lawsuit filed by the United States and the State of California on behalf of the EPA and the California Department of Toxic Substances Control in federal court, denominated *United*

---

[1] State authorities were also involved. In 1991, the Los Angeles Regional Water Quality Control Board requested Eaton to conduct a subsurface investigation at its facility, and subsequently ordered soil sampling, soil gas surveys, groundwater monitoring, and so on.

*States v. ITT Industries* (C.D.Cal., 2000, No. 990552 MRP). The EPA and the potentially responsible parties, including Eaton, negotiated to achieve a global settlement, under which the potentially responsible parties would conduct or fund the remedy for the Glendale sites and reimburse the EPA and the Department of Toxic Substances Control for their past and future response costs. The settlement was embodied in a consent decree, lodged contemporaneously with the filing of the government's first amended complaint in May 2000. On August 2, 2000, a judgment was entered based on the consent decree, imposing payment and other obligations on Eaton and others.

### B. *Vickers Inc. v. Insurance Co. of North America*

Meanwhile, Eaton sought coverage from its insurance companies in connection with the administrative enforcement proceedings that preceded the government's lawsuit. On April 11, 1996, in a lawsuit denominated *Vickers Inc. v. Insurance Company of North America* (Super. Ct. L.A. County, 1997, No. BC 147988), Eaton sued several insurance companies which had issued policies of primary insurance to Eaton between 1959 and 1986 (primary insurers).[2] Eaton alleged causes of action for declaratory relief and breach of contract. Eaton asserted that the policies of liability insurance issued by the primary insurers provided coverage for the EPA claims, and that each defendant was obligated to provide a defense, reimburse Eaton for its costs and expenses incurred in connection with the EPA claims, and indemnify Eaton for any settlements or judgments arising from the claims. The primary insurers denied any obligation to defend, asserting that the EPA claims were not "suits" within the meaning of their policies.

In *Vickers*, Eaton also sued, as Does 151 through 200, the "Excess Insurers." Eaton alleged the Excess Insurers had issued policies under which they would be liable for amounts in excess of the limits of liability of the applicable primary policy, where the primary policy limits had in fact been exceeded. The policies issued by the Excess Insurers were alleged to further provide that those insurers would defend against suits and claims if there were no applicable primary insurance, or if the applicable primary insurance had been exhausted. The Doe defendants were never identified or served in the *Vickers* lawsuit.

Eaton moved for summary adjudication in *Vickers*. The trial court granted the motion, ruling that the EPA claims were the functional equivalent of a

---

[2] Eaton was formerly known as Vickers Incorporated, and is the successor by merger to Sterer Manufacturing & Engineering Company. For sake of simplicity, we refer to any of the three entities as Eaton.

suit, so that the insurers had a duty to defend Eaton against the EPA claims. The Court of Appeal, however, reversed the trial court, holding that an insurer's duty to defend any "suit" does not include a duty to defend an administrative "claim." (*Fireman's Fund Ins. Co. v. Superior Court* (1997) 65 Cal.App.4th 1205, 1207, 1221 [78 Cal.Rptr.2d 418] ["[s]ince no suit has been filed against [Eaton], Fireman's Fund's duty to provide a defense has not been triggered"].) The appellate court's remittitur issued on December 23, 1998, after the Supreme Court resolved the same issue in the same way in *Foster-Gardner, Inc. v. National Union Fire Ins. Co.* (1998) 18 Cal.4th 857 [77 Cal.Rptr.2d 107, 959 P.2d 265] (*Foster-Gardner*).[3]

The *Vickers* parties (Eaton and its four primary insurers) later entered into a tolling agreement, and then stipulated to dismissal of the *Vickers* lawsuit. The suit was dismissed with prejudice as to Eaton's claim for defense costs arising from the administrative enforcement proceedings, and without prejudice as to (a) any claim for indemnity with respect to the administrative enforcement proceedings or any other claim or suit, and (b) any claim for defense costs with respect to any "suit" as defined under California law.

## C.  *This lawsuit*

Eaton filed this lawsuit on September 28, 2001, naming as defendants (1) the four primary insurers it sued in the *Vickers* case, and (2) four umbrella insurers, including CNA. The amended complaint alleges causes of action for declaratory relief and breach of contract against all defendants, as well as a bad faith cause of action against CNA. The complaint describes the EPA claims and the *United States v. ITT Industries* lawsuit (part A, *ante*), and asserts that the primary insurers are obligated to provide a defense and indemnification with respect to the claims and the lawsuit (except as set forth in the *Vickers* dismissal order (part B, *ante*)). Eaton's complaint further asserts that, to the extent Eaton is not entitled to coverage under the primary policies, "then [Eaton] contends that it is entitled to coverage under the umbrella policies issued by the Umbrella Defendants . . . ." The complaint asserts that Eaton provided timely notice to the insurers, that a demand was made for defense and indemnification, and that each of the insurers has breached its contracts of insurance by "failing and refusing to undertake [Eaton's] defense and indemnity with respect to the Claims and/or the Lawsuit."

---

[3] The Supreme Court held that environmental agency activity prior to the filing of a complaint—in *Foster-Gardner*, an order notifying the insured that it was a responsible party for pollution and requiring remediation—is not a "suit" triggering the insurer's duty to defend under a comprehensive general liability insurance policy. (*Foster-Gardner, supra*, 18 Cal.4th at pp. 860–861.)

CNA demurred to the first amended complaint, contending that the declaratory relief and breach of contract actions were barred by the four-year statute of limitations (Code Civ. Proc., § 337).[4] CNA argued that the claim against CNA was barred because CNA was not a signatory to the tolling agreement in the *Vickers* lawsuit, "and more than four years have gone by since Eaton made the same claims against the primary carriers that it is now making, or attempting to make, against CNA." Eaton countered that the statute of limitations did not begin to run until August 1998 when the Supreme Court decided, in *Foster-Gardner, supra,* 18 Cal.4th 857, that the duty to defend attaches only to "suits," and not to administrative claims. Because CNA's umbrella policy provides coverage where there is no applicable primary insurance, coverage under the CNA policy, according to Eaton, was triggered only when Eaton "became aware that the primary policies did not provide coverage for pre-suit costs associated with the [EPA claims]."

The trial court observed that Eaton was "dead in the water," and sustained CNA's demurrer, reasoning as follows: "There are no allegations in the First Amended Complaint . . . of when the contract was allegedly breached or when [CNA] allegedly acted in Bad Faith. It is clear from the verified complaint in the Vickers case that [Eaton] knew of the accrual of a cause of action against its insurance carriers concerning the soil contamination claims asserted against [Eaton] by the EPA and State of California by at least April 11, 1996. This action was not filed until September 28, 2001. This is more than four years."

Judgment was entered dismissing Eaton's complaint as to CNA, and this appeal followed.

## DISCUSSION

We conclude the trial court erred in sustaining CNA's demurrer based on the statute of limitations.

■ First, it is impossible to determine from the allegations of the complaint, or from the judicially noticed records of the *Vickers* lawsuit, when

---

[4] Eaton also alleged a bad faith claim against CNA in its amended complaint. The bad faith claim was based upon an assertion by CNA's corporate designee, at a November 8, 2002 deposition, that Eaton had not tendered the claims to CNA, despite correspondence in 1992 and 1993 in which CNA acknowledged submission of the claims. The insurers demurred to the bad faith claim on the ground it was uncertain and failed to state facts sufficient to constitute a cause of action. The trial court, finding the entire action barred by the statute of limitations, did not address this ground. We likewise do not address it.

Eaton's cause of action against CNA accrued. A cause of action for refusal to defend accrues "upon discovery of loss or harm, i.e., when the insurer refuses to defend." (*Lambert v. Commonwealth Land Title Ins. Co.* (1991) 53 Cal.3d 1072, 1077 [282 Cal.Rptr. 445, 811 P.2d 737] (*Lambert*); see Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2004) ¶ 7:707, p. 7B-74 (rev. # 1, 2004).) As the trial court recognized, the complaint contains no allegations as to when the insurance contract was breached, that is, when CNA refused to defend.

The trial court relied on the verified complaint in *Vickers* to conclude that Eaton "knew of the accrual of a cause of action against its insurance carriers concerning the soil contamination claims asserted against [Eaton] by the EPA and State of California by at least April 11, 1996 [when *Vickers* was filed]." Because a cause of action accrues when an insurer refuses to defend, the court presumably was relying on Eaton's allegations in *Vickers* that "[t]he defendants have each breached the terms of their respective policies by failing and refusing to undertake [Eaton's] defense and indemnity with respect to the Claims." CNA, however, was never identified or served as a Doe defendant in the *Vickers* case. Indeed, the *Vickers* complaint alleged that the names and capacity of the Doe defendants were unknown to Eaton when the complaint was filed. The amended complaint in this case, however, alleges that Eaton submitted the EPA claims to CNA for coverage by written correspondence on February 4, 1992, and again in September 1994,[5] thus suggesting that Eaton must have known CNA's identity when it filed *Vickers* in April 1996. Under these circumstances, the *Vickers* complaint cannot be read as establishing, or even alleging, that CNA had refused to defend as of the time the *Vickers* complaint was filed.

■    Second, it is settled that the duty to defend is continuing, and that the limitations period is equitably tolled from the time the cause of action accrues—upon CNA's refusal to defend—until the underlying lawsuit is terminated by a final judgment. (*Lambert, supra,* 53 Cal.3d at pp. 1077, 1079.) Under *Lambert*, Eaton could commence an action "once the insurer has refused a tender of defense," but was not obliged to do so, and had "the option of waiting until the duty to defend has expired before filing suit to

---

[5] Eaton alleges that it "submitted the Claims for coverage to [CNA] by written correspondence on February 4, 1992" and that the insurers "acknowledged [Eaton's] submission of the Claims to it for coverage in written correspondence to [Eaton] dated August 25, 1992 and March 23, 1993." Eaton further alleges that it provided additional notification by written correspondence dated September 15, 1994, receipt of which was acknowledged on September 23, 1994.

vindicate that duty." (*Id.* at pp. 1080, 1077.) CNA contends that, while Eaton had the option of waiting until entry of a final judgment in the underlying action to sue CNA, instead Eaton chose to sue in 1996, thus triggering the statute of limitations. However, it is not the filing of a lawsuit that triggers the statute of limitations on an insurance contract; it is the insurer's refusal to defend. (*Id.* at p. 1077.) Moreover, we are unaware of any principle of law that requires an insured to sue all of its insurers, including those who have not refused to defend, at the same time. Consequently, the fact that Eaton sued its primary insurers, and also sued unknown "Excess Insurers" as Doe defendants, is of no moment that we can discern.

■ CNA insists that one who is named as a Doe defendant is considered a proper party to an action, so that "the action against CNA commenced in 1996 for statute of limitations purposes." CNA misunderstands the purport and scope of the fictitious defendant statute (Code of Civil Procedure section 474). The point of fictitious defendant pleading is to stop the statute of limitations from running against an unknown defendant; it is not to start a statute of limitations that has not otherwise accrued. The rule is this: "Today, it is generally understood that when a complaint sets forth a cause of action against a defendant designated by a fictitious name because the plaintiff is genuinely ignorant of his name or identity, and his true name thereafter is discovered and substituted by amendment, he is considered a party to the action from its commencement so that the statute of limitations stops running as of the date the original complaint was filed." (*General Motors Corp. v. Superior Court* (1996) 48 Cal.App.4th 580, 589 [55 Cal.Rptr.2d 871] (*General Motors*).) Thus, a Doe defendant—whose "true name thereafter is discovered and substituted by amendment"—is considered a party to the action from its commencement. As the cases explain, "the purpose of section 474 is to enable a plaintiff to commence suit in time to avoid the bar of limitations where he is ignorant of the identity of the defendant . . . ." (*General Motors, supra,* 48 Cal.App.4th at pp. 589, 593, citing *Barnes v. Wilson* (1974) 40 Cal.App.3d 199, 203 [114 Cal.Rptr. 839].) This is not such a case. CNA's name was not "thereafter . . . discovered and substituted by amendment"; CNA was never made a party to the *Vickers* lawsuit.[6] The

---

[6] Even if Eaton is considered to have sued CNA in the *Vickers* lawsuit in 1996, we cannot discern how or why that would affect the statute of limitations within which Eaton could again sue CNA. The *Vickers* lawsuit was dismissed, for the most part, without prejudice. A dismissal "without prejudice" necessarily means without prejudice to the filing of a new action on the same allegations, so long as it is done within the period of the appropriate statute of limitations. (See *Wells v. Marina City Properties, Inc.* (1981) 29 Cal.3d 781, 784 [176 Cal. Rptr. 104, 632 P.2d 217]; see also *Wood v. Elling Corp.* (1977) 20 Cal.3d 353, 359 [142 Cal. Rptr. 696, 572 P.2d 755] [when statutory provisions operate to bring about a dismissal, "the applicability of the pertinent statute of limitations is restored *as if no action had been brought*" (original italics)].) *Lambert* instructs that the statute is tolled until the insurer's duty to defend expires, that is, upon a final judgment in the underlying lawsuit. (*Lambert, supra,* 53

question whether the statute of limitations has run against CNA depends, in the first instance, on whether and when it refused to defend Eaton, not on when Eaton sued its other insurers.[7]

■ Third, CNA is an umbrella or excess insurer. An excess insurer's obligation to defend the insured does not even arise until the insured's primary coverage is exhausted. (Croskey et al., Cal. Practice Guide: Insurance Litigation, *supra*, ¶ 8:106, p. 8-52 (rev. # 1, 2003) [the primary insurer owes the exclusive duty to defend until the primary coverage is exhausted or otherwise not on the risk].) Thus, the primary insurer's refusal, while still on the risk, to defend does not trigger the excess insurer's duty to defend, "even where the amount of the claim approaches or exceeds the primary's policy limits." (*Id.*, ¶ 8:109.5, p. 8-53.) CNA appears to acknowledge this point, observing in its reply memorandum to the trial court that, based on correspondence in the year 2000, Eaton's counsel "understood that CNA's role as an excess/umbrella carrier required exhaustion of the underlying policies' limits prior to the tender of the defense or indemnity and the denial of the same." Indeed, CNA quotes a letter from Eaton's counsel to CNA dated July 17, 2000, stating that: "Regarding the [Eaton] site, we provide the following update on the underlying environmental proceedings because CNA has not denied Aeroquip-Vickers' [Eaton's] claim for coverage regarding this site."

■ Accordingly, since neither the amended complaint nor the judicially noticed *Vickers* complaint discloses that the statute of limitations has run, the trial court erred in sustaining CNA's demurrer to the amended complaint on that ground.

---

Cal.3d at p. 1077.) Accordingly, even if the cause of action accrued in 1996, there is no basis for concluding that *Lambert*'s tolling requirements do not apply. We express no opinion on the hypothetical situation in which an insured does not avail itself of the *Lambert* tolling rule, sues and actively litigates a case against its insurer, dismisses the action, and then files a new lawsuit more than four years after the original accrual date. That is not the case here, as Eaton in the *Vickers* litigation did not prosecute a claim against CNA.

[7] CNA also argues the trial court's decision sustaining its demurrer was correct because Eaton's claims are barred by Code of Civil Procedure section 583.310 [an action must be brought to trial within five years after the action is commenced against the defendant]. Again, CNA assumes the *Vickers* action was an action against CNA merely because Eaton sued unnamed excess insurers as Doe defendants. Because CNA was neither identified nor served as a Doe defendant, we cannot agree. (See also *Nassif v. Municipal Court* (1989) 214 Cal.App.3d 1294, 1296, 1298 [263 Cal. Rptr. 195] [where plaintiff's first action was dismissed for failure to bring it to trial within three years, and plaintiff filed a second suit, the five-year period under which suit must be brought under Code of Civil Procedure section 583.310 did not run from the filing of the complaint in the first action; plaintiff obtained a new five-year period calculated from the filing of his complaint in the second action].)

## DISPOSITION

The judgment is reversed and the case is remanded to the trial court with instructions to vacate its order sustaining the demurrer to the first amended complaint and to enter a new order overruling the demurrer. The appellant is to recover its costs on appeal.

Rubin, Acting P. J., and Flier, J., concurred.