[No. B205882. Second Dist., Div. Two. Sept. 23, 2008.]

CARDIFF EQUITIES, INC., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
ROBERT W. O'NEEL III et al., Real Parties in Interest.

## COUNSEL

Law Offices of Anthony Capobianco, Anthony Capobianco; Law Offices of Charles W. Hokanson and Charles W. Hokanson for Petitioner.

No appearance for Respondent.

Benjamin, Weill & Mazer, Marc S. Mazer, Andrew J. Weill and Kenneth D. Schnur for Real Parties in Interest.

## OPINION

**CHAVEZ, J.**—The primary issue before us is whether a plaintiff may dismiss a complaint in the trial court after the case has been ordered into arbitration, but before an arbitration has commenced. We conclude that there

is nothing to preclude such a dismissal, and that after a dismissal, the trial court no longer has jurisdiction to order the parties to complete the arbitration.

## I. PROCEDURAL HISTORY AND STATEMENT OF FACTS

The facts are undisputed. This case involves two separate contracts. The purpose of the first contract was to document an investment in a limited partnership, and the second was a guarantee of the first.

In or around June 2005, petitioner Cardiff Equities, Inc. (Cardiff), a California corporation with a principal place of business in Los Angeles, entered into a contract with Robert W. O'Neel III (O'Neel), a real estate developer, pursuant to which Cardiff made an investment of $1.4 million as a limited partner in the formation of Myrtle Beach Partners, LP (MBP), a Delaware limited partnership, to purchase, fund, and ultimately develop real property located in Myrtle Beach, South Carolina (the Partnership Agreement). This agreement contained an arbitration provision.

Cardiff and O'Neel also entered into a second agreement (the Guaranty), pursuant to which O'Neel "absolutely and unconditionally" guaranteed to Cardiff the repayment of Cardiff's full investment in MBP, plus an agreed return, on or before July 31, 2006. This agreement provided that O'Neel was the sole member and manager of RWO Acquisitions, LLC, a Delaware limited liability company, which was the general partner of MBP. The Guaranty provided as follows: *"This is a Guaranty of payment and not of collection and independent promise by O'Neel to pay and perform, and O'Neel further waives any right to require that any action be brought against the Partnership or any other person or party or to require that resort be had to any security or to any balance of any deposit account or credit on the books of Cardiff in favor of or any other person or party. The obligations hereunder are independent of the obligations of the Partnership or any other person or entity to Cardiff, and a separate action or actions may be brought and prosecuted against O'Neel whether action is brought against the Partnership or any other person or entity or whether any other person or entity be joined in any such action or actions; and O'Neel waives the benefit of any statute of limitations affecting his covenants, obligations and liabilities hereunder or the enforcement thereof."*

The Guaranty did not contain an arbitration provision.

A. *Case No. 1.*

On June 7, 2007, Cardiff filed case No. BC372414 (Case No. 1) against O'Neel, MBP, Myrtle Beach Consolidated Partners, L.P. (MBCP), Myrtle

Beach Acquisitions, LLC, MBC Acquisitions, LLC, and Withers Preserve Management Company, LLC (collectively the O'Neel defendants). Cardiff sued for breach of both the Partnership Agreement and the Guaranty, copies of which were attached as exhibits to the complaint. Cardiff alleged that the O'Neel defendants breached these agreements by, "failing to pay monies due to Cardiff, by refusing to provide Cardiff with access to MBP's books and records, by refusing to account for profits of MBP, by misstating the results of MBP's operations and the impact of its merger into MBCP, by failing to provide reports to Cardiff, and by employing certain accounting improprieties designed to understate amounts due to MBP's limited partners."

In response to the complaint, the O'Neel defendants moved to compel arbitration and to stay trial proceedings pending completion of the arbitration. (Code Civ. Proc., §§ 1281.2, 1281.7.)[1] Cardiff opposed the motion on the basis that the Guaranty, rather than the Partnership Agreement, was the key document at issue in the case. Citing section 1281.2, subdivision (c), Cardiff argued that because the tort causes of action and the claims under the Guaranty were not arbitrable, the court should allow the civil action to proceed, even if some or all of the claims under the Partnership Agreement had to be arbitrated at a later date.[2]

The trial court granted the O'Neel defendants' motion to compel arbitration and ordered the trial proceeding stayed pending completion of the arbitration. The court found: (1) the gravamen of the action concerned the Partnership Agreement, which contained an arbitration provision to which Cardiff was a signatory; (2) the nonsignatory affiliate defendants were entitled to invoke the arbitration clause in the Partnership Agreement because the causes of action against them were "intimately founded in and intertwined with the underlying partnership agreement"; (3) the Guaranty was also a subject of the action; (4) the Guaranty did not make the Los Angeles courts the exclusive jurisdiction for resolving the parties' dispute; (5) the arbitration clause in the Partnership Agreement made arbitration before the American Arbitration Association (AAA) in New York the exclusive forum for resolving the parties' dispute; (6) the Partnership Agreement provided that Delaware law, as stated in *James & Jackson, LLC v. Willie Gary, LLC* (Del. 2006) 906 A.2d 76, governed the arbitrability of the dispute; (7) Delaware law had adopted the majority federal view that reference to the AAA rules "evidences a clear

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] Section 1281.2, subdivision (c), paragraph 3, provides that: "If the court determines that there are other issues between the petitioner and the respondent which are not subject to arbitration and which are the subject of a pending action or special proceeding between the petitioner and the respondent and that a determination of such issues may make the arbitration unnecessary, the court may delay its order to arbitrate until the determination of such other issues or until such earlier time as the court specifies."

and unmistakable intent to submit arbitrability issues to an arbitrator"; and (8) the Partnership Agreement referenced the AAA rules.

Cardiff did not seek review of the order by writ petition.[3]

On October 24, 2007, Cardiff filed an ex parte motion to shorten time to hear a motion to lift the stay imposed in Case No. 1 and for permission to file a three-count, first amended complaint. The proposed pleading named O'Neel as the sole defendant and, according to Cardiff, deleted "the claims that the court previously ruled [were] subject to arbitration and assert[ed] only legally separate claims that are not subject to arbitration."[4] In opposition, the O'Neel defendants argued that the ex parte motion was a violation of the order staying Case No. 1 and a thinly disguised motion for reconsideration of the order compelling arbitration.

Cardiff's ex parte motion to lift the stay was granted and a hearing was set on November 27, 2007, on the motion to amend. On October 30, 2007, Cardiff filed a request for dismissal without prejudice of Case No. 1. Cardiff notified the court that it was taking its motion to amend the complaint off calendar.

B. *Case No. 2.*

On October 31, 2007, Cardiff filed case No. BC380048 (Case No. 2), naming O'Neel as the sole defendant. The complaint, which was identical to the amended complaint Cardiff had sought to file in Case No. 1, restated some, but not all, of the claims asserted in Case No. 1. At the same time that Cardiff filed the complaint in Case No. 2, it filed a notice in accordance with Los Angeles County Superior Court Local Rules, rule 7.3, advising the court that Case No. 1 had been dismissed without prejudice and that the two cases were related because they "involve[d] the same parties and were based on the same or similar claims."

On November 2, 2007, the superior court clerk entered the dismissal of Case No. 1 as requested by Cardiff.

On November 26, 2007, the trial court found that Case No. 1 and Case No. 2 were related and set the matter for a status conference in December.

On November 27, 2007, O'Neel filed a motion to stay Case No. 2 pursuant to section 1281.4 on the basis that the controversy alleged therein had been

---

[3] The order was filed on October 1, 2007, and notice of entry of judgment was filed on October 5, 2007.

[4] The proposed first amended complaint set forth causes of action for breach of the Guaranty, fraud and conversion.

ordered to arbitration. O'Neel requested sanctions for Cardiff's attempt to "circumvent" the trial court's order compelling arbitration in Case No. 1.

Cardiff opposed the stay motion, claiming it had the absolute right to dismiss its prior action and thereafter to pursue only claims against O'Neel under the Guaranty.

On December 20, 2007, the trial court set a status conference for January 11, 2008, to enable Cardiff's counsel to file a brief informing the court of the selection of the arbitrator and the progress made in the arbitration on Case No. 1.

On January 23, 2008, the trial court granted O'Neel's motion to stay Case No. 2, concluding "that the dismissal doesn't affect the underlying order compelling arbitration." The trial court then signed the order with the finding that "the complaint filed in [Case No. 2] is nothing other than an attempt to plead around the Court's prior ruling compelling arbitration in [Case No. 1]. The Court previously issued an arbitration order in [Case No. 1] in October 2007, after making a finding that the claims asserted in [Case No. 1] were subject to arbitration under the relevant partnership agreement since all of the claims were intimately founded on and intertwined with the underlying partnership agreement. The Court finds that the claims as presently alleged in the instant case are also intimately founded [o]n and intertwined with the underlying partnership agreement and, therefore, is hereby stayed pending the arbitration in [Case No. 1] pursuant to [section] 1281.4." The court denied O'Neel's request for sanctions.

In February 2008, Cardiff petitioned this court for a writ of mandate compelling the trial court to vacate its order granting O'Neel's motion to stay Case No. 2 and to issue a new order denying the motion. Thereafter, we issued an order to show cause why the requested relief should not be granted.

## II. CONTENTION

Cardiff contends that the voluntary dismissal of Case No. 1, even after an order compelling arbitration was entered, coupled with the filing of Case No. 2, divests the trial court of jurisdiction, and thus precludes the court from making further orders in Case No. 1. Cardiff also contends that dismissal of Case No. 1 and filing of Case No. 2 removes any impediment to Cardiff's plan to immediately litigate its Guaranty claims in the trial court and to arbitrate its Partnership Agreement claims (Partnership claims) at a later date, if at all. Cardiff contends that the trial court erred in staying Case No. 2.

## III. DISCUSSION

### A. *De novo standard of review is required.*

Ordinarily a trial court's decision to stay an action at law when a controversy has been ordered to arbitration is reviewed under the abuse of discretion standard. (*Henry v. Alcove Inv.* (1991) 233 Cal.App.3d 94, 101 [284 Cal.Rptr. 255] [controversy ordered to arbitration pursuant to § 1281.2 and stay imposed].) However, to resolve the question of whether Case No. 2 was properly stayed pursuant to section 1281.4 we must first decide whether Cardiff's voluntary dismissal of Case No. 1 and subsequent filing of Case No. 2 set aside the order, or portion thereof, compelling arbitration. The underlying decisive facts are undisputed. Accordingly, we are presented with a legal question we decide de novo. (See *Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888 [264 Cal.Rptr. 139, 782 P.2d 278] [application of a statute to undisputed facts presents a question of law subject to independent appellate determination].)

### B. *Cardiff's actions severed the Guaranty claims from the Partnership claims, thereby relieving Cardiff of the obligation of arbitrating its Guaranty claims.*

#### 1. *Voluntary dismissal of Case No. 1.*

We first consider whether a plaintiff may voluntarily dismiss a case after a motion to compel arbitration of the case has been granted, but before arbitration has commenced.

Real parties in interest contend that dismissal could only be ordered by the arbitral forum. Their reliance on *Blake v. Ecker* (2001) 93 Cal.App.4th 728 [113 Cal.Rptr.2d 422], disapproved on other grounds in *Le Francois v. Goel* (2005) 35 Cal.4th 1094 [29 Cal.Rptr.3d 249, 112 P.3d 636], is misplaced. In *Blake*, one day after the trial court ordered a FEHA-based (California Fair Employment and Housing Act; Gov. Code, § 12900 et seq.) claim to arbitration, the decision in *Armendariz v. Foundation Health Psychcare Services, Inc.* was issued by the Court of Appeal holding enforceable an employer-imposed contractual agreement for arbitration. (*Blake, supra*, at p. 735.) The Supreme Court thereafter granted review in *Armendariz* and ultimately issued its opinion in that matter. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 [99 Cal.Rptr.2d 745, 6 P.3d 669].) After issuance of the Supreme Court opinion, the defendant in *Blake* made a motion in the trial court to dismiss the complaint for failure to prosecute. The plaintiff moved to vacate the prior order compelling arbitration and staying the action based on the holding in *Armendariz*. The trial court granted the motion to dismiss and found the plaintiff's motion to set aside to be moot. (*Blake, supra*, at pp. 735–737.)

The Court of Appeal reversed the order of dismissal on the ground that the trial court did not have jurisdiction to consider the defendant's motion after the order for arbitration had issued. Rather, such relief should have been sought in the arbitration proceeding. But, the Court of Appeal ruled that the trial court did have jurisdiction to rule on the plaintiff's motion to vacate under section 1008, subdivision (c).[5] (*Blake, supra,* 93 Cal.App.4th at pp. 738–739.)

■ Despite broad language in *Blake* suggesting that a trial court lacks jurisdiction to determine a motion to dismiss in all instances once it has granted a petition to compel arbitration and stayed the action at law, we cannot conclude that *Blake* supports real parties in interest's argument that a *plaintiff* cannot voluntarily dismiss an action once the case is ordered to arbitration. We cannot ignore the practical consequences of construing *Blake* to apply to the circumstances here, as such a conclusion would require plaintiff to open arbitration proceedings in New York and pay all necessary fees simply to seek dismissal of the case. Moreover, construing *Blake* to preclude a plaintiff from voluntarily dismissing a case ordered to arbitration before the arbitration has commenced would be at odds with the right of a plaintiff to dismiss a case voluntarily and without prejudice set forth in section 581, subdivisions (b)(1) and (c), both of which provide that a plaintiff may voluntarily dismiss his or her complaint at any time before the "actual commencement of trial."[6] A trial actually commences "at the beginning of . . . argument of any party or his or her counsel, or if there is no opening statement, then at the time of the administering of the oath or affirmation to the first witness, or the introduction of any evidence." (§ 581, subd. (a)(6).)

■ Nor was Cardiff's voluntary dismissal precluded by cases holding, in a variety of contexts, that a plaintiff's right to dismiss is superseded by a ruling or determination that effectively disposes of the plaintiff's case and thereby obviates the need for trial. (*Gray v. Superior Court* (1997) 52 Cal.App.4th 165, 173 [60 Cal.Rptr.2d 428].) "The legal principles that have evolved in this area tend to focus on the reasons for the dismissal and whether the plaintiff acted in good faith or merely for tactical reasons

---

[5] Section 1008, subdivision (c) provides: "If a court at any time determines that there has been a change of law that warrants it to reconsider a prior order it entered, it may do so on its own motion and enter a different order."

[6] Section 581, subdivisions (b) and (c) provide in part:

"(b) An action may be dismissed in any of the following instances:

"(1) With or without prejudice, upon written request of the plaintiff to the clerk, filed with papers in the case, or by oral or written request to the court at any time before the actual commencement of trial, upon payment of the costs, if any. [¶] . . . [¶]

"(c) A plaintiff may dismiss his or her complaint, or any cause of action asserted in it, in its entirety, or as to any defendant or defendants, with or without prejudice prior to the actual commencement of trial."

designed to prevent a defendant from obtaining an otherwise inevitable summary judgment" or other judgment of dismissal. (*Tire Distributors, Inc. v. Cobrae* (2005) 132 Cal.App.4th 538, 544 [33 Cal.Rptr.3d 761].) Here, even assuming that an arbitration can be considered a "trial" within the meaning of section 581, it was undisputed that no "trial" had commenced and no dispositive motion had been ruled upon prior to Cardiff's voluntary dismissal of Case No. 1. Under these circumstances, we conclude that Cardiff had an absolute right to dismiss Case No. 1 after the trial court granted the O'Neel defendants' motion to compel arbitration.

### 2. Filing of Case No. 2.

Cardiff contends it had the absolute right to file Case No. 2 following its voluntary dismissal of Case No. 1. We agree.

■ "A dismissal 'without prejudice' necessarily means without prejudice to the filing of a new action on the same allegations, so long as it is done within the period of the appropriate statute of limitations. [Citations.]" (*Eaton Hydraulics Inc. v. Continental Casualty Co.* (2005) 132 Cal.App.4th 966, 974–975, fn. 6 [34 Cal.Rptr.3d 91].) Thus, subject to the statute of limitations, Cardiff had the right to file a new action eliminating all but one of the defendants named in the original action and containing some, but not all, of the claims previously set forth in Case No. 1. In fact, following its voluntary dismissal of Case No. 1, Cardiff could have filed an action identical to the one it dismissed. (*Elling Corp. v. Superior Court* (1975) 48 Cal.App.3d 89, 96 [123 Cal.Rptr. 734].)

### 3. The order compelling arbitration.

■ Cardiff contends that it is no longer bound by that portion of the trial court's order compelling arbitration of the Guaranty claims. Cardiff claims that its voluntary dismissal of Case No. 1, coupled with the filing of Case No. 2, acted to sever the Partnership claims from the Guaranty claims so that it is now free to immediately litigate the Guaranty claims in the trial court and to file another action and arbitrate its Partnership claims at a later date. We agree.

■ The trial court found that the Partnership claims could not be severed from the Guaranty claims because they are inextricably intertwined. It then rejected Cardiff's argument that arbitration of the Partnership claims, which Cardiff conceded were required to be decided in the arbitral forum, should be delayed until such time as the Guaranty claims could be litigated in the trial court. The entire controversy was then ordered to arbitration. Although dissatisfied with these findings and the order compelling arbitration, Cardiff

did not attack the order or the *basis* for it by seeking reconsideration, or a petition for writ of mandate. Instead, Cardiff voluntarily dismissed the original action, and—consistent with language in the Guaranty permitting claims on that agreement to be brought independently—filed a second action containing some, but not all, of the claims previously asserted in Case No. 1. This action effectively severed the Partnership claims from the Guaranty claims. Since Cardiff intends to pursue the Guaranty claims independently, as permitted by the Guaranty, there is no longer any basis for arbitration of the Guaranty claims. (See *Freeman v. State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 481 [121 Cal.Rptr. 477, 535 P.2d 341] [no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate]; *United Public Employees v. City and County of San Francisco* (1977) 53 Cal.App.4th 1021 [62 Cal.Rptr.2d 440].)

C. *The section 1281.4 stay.*

Cardiff contends the trial court erred in staying Case No. 2 pursuant to section 1281.4. We agree.

Section 1281.4 provides: "If a court of competent jurisdiction, whether in this State or not, has ordered arbitration of a controversy which is an issue involved in an action or proceeding pending before a court of this State, the court in which such action or proceeding is pending shall, upon motion of a party to such action or proceeding, stay the action or proceeding until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies."

Under section 1281.4, a party to a judicial proceeding "is entitled to a stay of those proceedings whenever (1) the arbitration of a controversy has been ordered, and (2) that controversy is also an issue involved in the pending judicial action." (*Marcus v. Superior Court* (1977) 75 Cal.App.3d 204, 209 [141 Cal.Rptr. 890].) "Section 1280, subdivision (c), defines 'controversy' as 'any question arising between parties to an agreement whether such question is one of law or of fact or both.' " (*Heritage Provider Network, Inc. v. Superior Court* (2008) 158 Cal.App.4th 1146, 1152 [70 Cal.Rptr.3d 645] (*Heritage*).) "A controversy can be a single question of law or fact, and a stay *shall* be issued upon proper motion if the court has ordered arbitration of a controversy that is also an issue involved in an action or proceeding pending before it. [Citation.] Thus, a single overlapping issue is sufficient to require imposition of a stay." (*Id.* at pp. 1152–1153.)

The controversy ordered to arbitration in Case No. 1 included a cause of action for breach of the Guaranty as well as claims arising out of the Partnership Agreement. The complaint filed in Case No. 2 sets forth primarily

a cause of action for breach of the Guaranty. The question is whether there is a "single overlapping issue" sufficient to support the trial court's order staying Case No. 2 pending the arbitration ordered in Case No. 1.

■ In *Heritage*, the appellate court concluded that where there is at least one overlapping issue in a controversy in which some claims are subject to arbitration and others are not, it was error for the trial court to deny a motion for stay of the court action. (*Heritage, supra*, 158 Cal.App.4th at pp. 1152–1153.) Here, the trial court found the Partnership claims and the Guaranty claims to be "intertwined." Given that finding, had Cardiff not dismissed the entire Case No. 1, the stay would have been proper. However, the effect of dismissal is different from a severance. With limited exceptions inapplicable here, a voluntary dismissal deprives the court of subject matter jurisdiction and personal jurisdiction in that case. (*Shapell Industries, Inc. v. Superior Court* (2005) 132 Cal.App.4th 1101, 1108 [34 Cal.Rptr.3d 149].) A court cannot force a litigant to pursue claims it chooses to abandon. (Cf. *Harris v. Billings* (1993) 16 Cal.App.4th 1396, 1404 [20 Cal.Rptr.2d 718] [trial court's delay reduction, or "fast track" program did not affect a plaintiff's right to voluntarily dismiss an action, as "[t]he delay reduction program is concerned with the management and progress of cases currently in the court system, not with disputes which the parties wish to remove from the system"].)[7] In light of the voluntary dismissal of Case No. 1, there was no basis upon which the trial court could stay Case No. 2.

D. *The validity of the trial court's order compelling arbitration is not at issue in connection with these writ proceedings.*

Finally, Cardiff suggests that in order to resolve the issue of whether the trial court erred in staying Case No. 2 we must first determine whether the trial court erred in granting the O'Neel defendants' motion to compel arbitration. We disagree.

The primary issues presented in connection with these writ proceedings are whether the procedure used by Cardiff acted to set aside the order, or portion thereof, compelling arbitration, and whether the stay of Case No. 2 was authorized pursuant to section 1281.4. Our findings in this regard do not depend on a finding that the order compelling arbitration was either valid or invalid.

While it is true that we have the *discretion* to review the trial court's October 2007 order compelling arbitration in connection with these proceedings, we are not persuaded to exercise that discretion. An order compelling

---

[7] As we discussed elsewhere in the opinion, if Cardiff later decides to file another action to pursue any claim under the Partnership Agreement it will necessarily have to do so in arbitration consistent with the trial court's order. (See *Byerly v. Sale* (1988) 204 Cal.App.3d 1312, 1314 [251 Cal.Rptr. 749].)

arbitration is nonappealable. (*Bertero v. Superior Court* (1963) 216 Cal.App.2d 213, 222 [30 Cal.Rptr. 719].)

## DISPOSITION

The order to show cause is discharged and the petition for writ of mandate is granted. Petitioner is awarded costs of appeal.

Doi Todd, Acting P. J., concurred.

**ASHMANN-GERST, J., Dissenting.**—I respectfully dissent.

The majority frames the issue before us as "whether a plaintiff may dismiss a complaint in the trial court after the case has been ordered into arbitration, but before an arbitration has commenced." (Maj. opn., *ante*, at p. 1543.) The majority has misstated the "primary issue" presented in this petition for writ of mandate. (Maj. opn., *ante*, at p. 1543.) The critical issue is not whether Cardiff Equities, Inc. (Cardiff), could dismiss case No. BC372414, but whether a plaintiff may circumvent an order compelling arbitration simply by dismissing its complaint and filing a new action based upon the same foundational facts.

Keeping this in mind, I agree with the majority that Cardiff had an absolute right to voluntarily dismiss case No. BC372414 without prejudice pursuant to Code of Civil Procedure section 581, subdivisions (b)(1) and (c)[1] following the trial court's order compelling arbitration. I also agree that Cardiff's filing of case No. BC380048 was permissible, subject to the statute of limitations. However, for the reasons set forth below, I disagree with the majority's conclusion that the trial court's order staying the litigation in case No. BC380048 was improper. In light of the unchallenged finding that Cardiff's claims in case No. BC372414 were "inextricably intertwined," the obvious overlapping and similar claims in case No. BC380048, Cardiff's deliberate attempt to circumvent the order compelling arbitration, and well-established legal authority that precludes a litigant from vacating a court order, I conclude that the trial court providently granted Robert W. O'Neel III's (O'Neel) request for a stay pursuant to section 1281.4.

*Procedural Background*

*Cardiff files its first complaint, in case No. BC372414*

On June 7, 2007, Cardiff initiated litigation against O'Neel and others (collectively referred to as the O'Neel defendants) by filing case

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

No. BC372414. Cardiff alleged that in 2005, it invested in Myrtle Beach Partners, LP (MBP), pursuant to the terms of a partnership agreement. Cardiff invested $1.4 million in MBP and in return received an ownership interest. It also was entitled to receive a preferred return on its investment. "As an inducement to Cardiff to make its investment in MBP, O'Neel personally guaranteed certain aspects of Cardiff's investment and return thereon, and promised to pay certain fees to Cardiff" pursuant to the terms of a guaranty of payment and fee agreement (guaranty).

Cardiff later alleged that in 2006, the O'Neel defendants caused MBP to be merged into Myrtle Beach Consolidated Partners, L.P. (MBCP). In connection with that merger, the O'Neel defendants used accounting improprieties to reduce substantially the value of Cardiff's interest in MBP. The O'Neel defendants also refused to provide an accounting of the amounts paid out by MBP.

Based on the foregoing allegations, Cardiff alleged that the O'Neel defendants "breached the Partnership Agreement and the Guaranty by failing to pay monies due to Cardiff, by refusing to provide Cardiff with access to MBP's books and records, by refusing to account for profits of MBP, by misstating the results of MBP's operations and the impact of its merger into MBCP, by failing to provide reports to Cardiff, and by employing certain accounting improprieties designed to understate amounts due to MBP's limited partners, among other things."

### The O'Neel defendants move to compel arbitration

In response to the pleading, the O'Neel defendants filed a motion to compel arbitration. They pointed out that the partnership agreement contains an arbitration provision, and then argued that all of the claims alleged by Cardiff were subject to arbitration. "The allegations regarding the Partnership Agreement are incorporated into each of the Causes of Action in the Complaint; the allegations regarding the alleged breach are incorporated into 9 of the 13 causes of action. These are not independent actions, but depend on the existence of the Partnership Agreement." Because each cause of action arose from the partnership agreement, that agreement was anything but "peripheral to this dispute."

### The trial court grants the O'Neel defendants' motion

On October 1, 2007, the trial court granted the O'Neel defendants' motion to compel arbitration. It found "that the gravamen of this action concerns the [partnership agreement] which contains an arbitration clause to which [Cardiff] is a signatory. The non-signatory defendants may invoke the arbitration clause in the partnership agreement to compel [Cardiff] to arbitrate its

claims because the causes of action against the non-signatory defendants are intimately founded in and intertwined with the underlying partnership agreement." Cardiff was ordered to submit this dispute to arbitration; the action was stayed pending completion of the arbitration.

### *Cardiff dismisses case No. BC372414 and files a new action*

Cardiff did not challenge the trial court's October 1, 2007, order. Instead, it voluntarily dismissed case No. BC372414 without prejudice and filed a new action, case No. BC380048. Although the complaint in this new action named O'Neel as the only defendant and overtly alleged only breach of the guaranty (not the partnership agreement), the pleadings are strikingly similar. Like the complaint in case No. BC372414, the complaint in case No. BC380048 alleges facts showing the formation of MBP, Cardiff's financial investment, and Cardiff's receipt of an ownership interest. It also sets forth execution of the partnership agreement, as well as the allegation that Cardiff was entitled to receive a preferred return.

Cardiff further alleges that in July 2006, O'Neel caused MBP to be merged into MBCP, and that in connection with the merger, O'Neel and his affiliates unilaterally determined the value of Cardiff's MBP interest, significantly undervaluing its interest. According to the complaint, Cardiff could not determine the "exact amount of such underpayment . . . without access to information which O'Neel has refused to provide."

Based on the foregoing allegations, Cardiff asserts that "O'Neel breached the Guaranty by failing to pay monies due to Cardiff, by refusing to provide Cardiff with access to MBP's books and records, by refusing to account for profits of MBP and to explain deductions and payments to third parties, by causing MBP to breach its obligations to Cardiff, by misstating the results of MBP's operations and the impact of its merger into MBCP, by failing to provide reports to Cardiff, and by employing certain accounting improprieties designed to understate amounts due to Cardiff, among other things."

### *Case No. BC372414 and case No. BC380048 are deemed related*

Simultaneously with the filing of the complaint, Cardiff filed a notice of related case, indicating that case No. BC380048 was related to case No. BC372414. On November 26, 2007, the superior court found the two cases to be related.

### *O'Neel moves to stay case No. BC380048*

O'Neel then moved to stay case No. BC380048 on the ground that the claims alleged in Cardiff's complaint had been ordered to arbitration. O'Neel

argued that this action arose "from the exact same set of facts as those" presented in case No. BC372414. Because the trial court previously ordered this dispute to arbitration, O'Neel argued that case No. BC380048 should be stayed pursuant to section 1281.4 pending completion of the arbitration.

*The trial court grants O'Neel's motion to stay*

Over Cardiff's opposition, the trial court granted O'Neel's motion. The trial court explained: "[T]he complaint filed in [case No. BC380048] is nothing other than an attempt to plead around the Court's prior ruling compelling arbitration in the Related Case [case No. BC372414]. The Court previously issued an arbitration order in the Related Case in October 2007 after making a finding that the claims asserted in the Related Case were subject to arbitration under the relevant partnership agreement since all of the claims were intimately founded in and intertwined with the underlying partnership agreement. The Court finds that the claims as presently alleged in the instant case are also intimately founded in and intertwined with the underlying partnership agreement and, therefore, [the case] is hereby stayed pending the arbitration in the Related Case pursuant to . . . Section 1281.4."

*Cardiff files a petition for writ of mandate*

Dissatisfied with the trial court's order, Cardiff filed a petition for a writ of mandate, asking us to set aside the order staying the litigation in case No. BC380048. I see no basis to do so.

*The Order Compelling Arbitration Remains Intact*

Cardiff's claims in case No. BC380048 are subject to the trial court's prior order compelling arbitration. In case No. BC372414, the trial court determined that the Partnership claims and the Guaranty claims[2] were inextricably intertwined and subject to arbitration. Although dissatisfied with this finding and order, Cardiff did not attack the order, and thus the basis for it, by filing, for example, a motion for reconsideration (§ 1008; *Clark v. First Union Securities, Inc.* (2007) 153 Cal.App.4th 1595, 1608–1609 [64 Cal.Rptr.3d 313]) or a petition for writ of mandate. Thus, that order became final.

The majority attempts to avoid this inevitable result by concluding that Cardiff's procedural maneuvering effected a successful vacating of the trial court's order compelling arbitration. What the majority ignores, however, is the well-established principle that only trial courts, not litigants, may vacate

---

[2] For the ease of the reader, I use the phrase "Partnership claims" to refer to those claims alleged by Cardiff to have arisen solely out of the partnership agreement; the phrase "Guaranty claims" includes those alleged claims that have arisen solely out of the guaranty.

prior court orders. (See *Blake v. Ecker* (2001) 93 Cal.App.4th 728, 739, fn. 10, 746–747 [113 Cal.Rptr.2d 422], overruled on other grounds in *Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1107 & fn. 5 [29 Cal.Rptr.3d 249, 112 P.3d 636]; *Brock v. Kaiser Foundation Hospitals* (1992) 10 Cal.App.4th 1790, 1799 [13 Cal.Rptr.2d 678] [a plaintiff's voluntary dismissal of an action at law in the wake of an unfavorable arbitration order does not act to vacate the order compelling arbitration].) Unless an order compelling arbitration is *set aside by the trial court*, the parties are bound to resolve their dispute in the arbitral forum. (See *Blake v. Ecker, supra*, 93 Cal.App.4th at pp. 738–740.) Were the rule otherwise, every finding that arbitrable and nonarbitrable claims are inextricably intertwined—and every order compelling arbitration based on such a finding—could be evaded by the tactic of a plaintiff's voluntary dismissal of the judicial action at law and subsequent filing of a new, related action. To allow a plaintiff to avoid a trial court's order compelling arbitration in such a fashion would undermine the arbitration statutes and violate California's public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 [10 Cal.Rptr.2d 183, 832 P.2d 899].)

The majority offers several reasons for its decision to grant Cardiff's petition for writ of mandate, each of which is unconvincing. For example, the majority concludes that the complaint filed by Cardiff in case No. BC380048 "sets forth primarily a cause of action for breach of the Guaranty" (maj. opn., *ante*, at pp. 1551–1552) and that Cardiff thus "effectively severed" (maj. opn., *ante*, at p. 1551) its Partnership claims from its Guaranty claims. I cannot agree for at least two reasons. First, despite the majority's holding that a party's "actions [can] sever[]" claims alleged in a pleading (maj. opn., *ante*, at p. 1548), no legal authority supports such a novel proposition. Rather, the weight of authority—authority that I believe is correct—confirms that only a court may engage in the act of severance. (See, e.g., *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 121–124 [99 Cal.Rptr.2d 745, 6 P.3d 669] [discussing a trial court's capacity to sever an unconscionable provision of a contract]; *People v. Ochoa* (2001) 26 Cal.4th 398, 423–424 [110 Cal.Rptr.2d 324, 28 P.3d 78] [summarizing the criteria to guide trial court decisions on severance motions]; §§ 592, 597, 598 [statutes that regulate the order of proof at trial]; § 597.5 [in a malpractice action, the trial court must order a separate trial on a statute of limitations defense]; § 1048, subd. (b)[3] [court may order separate trials]; Civ. Code, § 3295, subd. (d) ["The court shall, on application of any defendant, preclude the admission of evidence of that defendant's profits or financial condition until

---

[3] "Although judges and lawyers commonly use the term 'sever' to describe orders for separate trials within a single action, this label is inaccurate. The term 'sever' was removed from the statute in 1971." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2001) ¶ 12:408.5, pp. 12(I)-83 to 12(I)-84 (rev. # 1, 2001).)

after the trier of fact returns a verdict for plaintiff awarding actual damages and finds that a defendant is guilty of malice, oppression, or fraud . . .”].)

Second, although Cardiff was careful not to specifically plead a cause of action for breach of the partnership agreement in case No. BC380048, it is clear from the allegations summarized above that that is exactly what Cardiff is claiming. After all, both pleadings allege the formation of MBP, the execution of the partnership agreement, and Cardiff's rights under the partnership agreement. Significantly, both pleadings also allege that O'Neel executed the guaranty to induce Cardiff to invest in MBP. As for Cardiff's breach of contract cause of action in case No. BC380048, other than referring only to O'Neel (as opposed to the O'Neel defendants) and deleting the breach of the partnership agreement label, the allegedly wrongful conduct that amounts to a breach is identical to that alleged in the complaint in case No. BC372414.

In fact, Cardiff could not allege otherwise. A plain reading of the guaranty reveals that a breach of the partnership agreement is a predicate to a claim for breach of the guaranty. The guaranty provides, for example, “O'Neel hereby absolutely and unconditionally guarantees to Cardiff the payment by [MBP] of [Cardiff's $1.4 million investment] plus . . . the [preferred return] not previously distributed to Cardiff in accordance with the terms of the Partnership Agreement.” In other words, absent a proven breach of the partnership agreement, Cardiff has no basis upon which to pursue a claim for breach of the guaranty.

That being said, according to the terms of the partnership agreement, any alleged breach of that agreement is required to be determined in arbitration. Yet, what the majority has done is allow Cardiff to avoid the terms of the parties' express arbitration agreement by characterizing its breach of the guaranty cause of action as wholly independent from the partnership agreement. Now Cardiff is able to litigate the question of whether O'Neel (and/or his affiliates) has breached the partnership agreement in a court of law, in the face of an unambiguous agreement that mandates otherwise.

The majority also supports its decision by relying upon the general proposition that “[a] court cannot force a litigant to pursue claims it chooses to abandon.” (Maj. opn., *ante*, at p. 1552.) While that may be true, Cardiff has not abandoned its Partnership claims. “Abandonment” means “[t]he relinquishing of a right or interest with the intention of never again claiming it.” (Black's Law Dict. (8th ed. 2004) p. 2, col. 1; see *County of Los Angeles v. Hale* (1958) 165 Cal.App.2d 22, 28–29 [331 P.2d 166] [voluntary dismissal, followed by filing of new complaint, is not abandonment justifying fees award under statutes concerning eminent domain].) Instead of abandoning its

Partnership claims, Cardiff readily admits that that portion of the order compelling arbitration of the Partnership claims remains viable and insists that it has every right to pursue those claims in arbitration. The majority's conclusion notwithstanding, Cardiff has not relinquished its right or interest in the Partnership claims with the intention of never again claiming it. Thus, it has not abandoned its Partnership claims.

Oddly, and inconsistently, the majority implicitly agrees. The majority writes: "if Cardiff later decides to file another action to pursue any claim under the Partnership Agreement it will necessarily have to do so in arbitration consistent with the trial court's order." (Maj. opn., *ante*, at p. 1552, fn. 7.) In other words, Cardiff is entitled to litigate its Partnership claims prior to or after the action at law involving the Guaranty claims has been resolved, or even simultaneously with the action at law involving the Guaranty claims. This holding is incongruous with the majority's statement that Cardiff has abandoned its Partnership claims.

In a similar vein, the majority's conclusion also conflicts with the general rule regarding dismissals and their consequences. Ordinarily, " '[a] plaintiff's voluntary dismissal of his action has the effect of an absolute withdrawal of his claim and leaves the defendant as though he had never been a party. [Citations.]' " (*Paniagua v. Orange County Fire Authority* (2007) 149 Cal.App.4th 83, 89 [56 Cal.Rptr.3d 746].) But, following the majority's lead, not so in this case. According to the majority, Cardiff's voluntary dismissal of its Partnership claims did not have the effect of an absolute withdrawal of those claims, but rather those claims have been preserved and Cardiff will be allowed to litigate them.

Perhaps most troublesome is the majority's endorsement of Cardiff's tactical maneuverings and its failure to exhaust other remedies available to it. Undeniably, Cardiff dismissed case No. BC372414 and filed case No. BC380048 solely to circumvent the trial court's (1) finding that the Partnership claims and the Guaranty claims were inextricably intertwined, and (2) order compelling arbitration. I cannot endorse such improper litigation game playing.

### The Section 1281.4 Stay Was Mandatory

In light of the foregoing, I readily conclude that the trial court's order staying the litigation in case No. BC380048 was mandatory and thus proper.

Section 1281.4 provides: "If a court of competent jurisdiction, whether in this State or not, has ordered arbitration of a controversy which is an issue involved in an action or proceeding pending before a court of this State, the

court in which such action or proceeding is pending shall, upon motion of a party to such action or proceeding, stay the action or proceeding until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies."

Under section 1281.4, a party to a judicial proceeding "is entitled to a stay of those proceedings whenever (1) the arbitration of a controversy has been ordered, and (2) that controversy is also an issue involved in the pending judicial action." (*Marcus v. Superior Court* (1977) 75 Cal.App.3d 204, 209 [141 Cal.Rptr. 890].)

As the majority admits, arbitration of a controversy was ordered. (Maj. opn., *ante*, at p. 1550.) Specifically, on October 1, 2007, the trial court ordered arbitration of all claims pled in case No. BC372414, including claims for breach of the partnership agreement and breach of the guaranty.

That controversy is an issue involved in case No. BC380048, the pending judicial action. "Section 1280, subdivision (c), defines 'controversy' as 'any question arising between parties to an agreement whether such question is one of law or of fact or both.' " (*Heritage Provider Network, Inc. v. Superior Court* (2008) 158 Cal.App.4th 1146, 1152 [70 Cal.Rptr.3d 645].) "A controversy can be a single question of law or fact, and a stay *shall* be issued upon proper motion if the court has ordered arbitration of a controversy that is also an issue involved in an action or proceeding pending before it. [Citation.] Thus, a single overlapping issue is sufficient to require imposition of a stay." (*Id.* at pp. 1152–1153.)

The controversy ordered to arbitration in case No. BC372414 is described in the complaint filed therein, which includes causes of action for breach of both the partnership and the guaranty. As set forth above, the complaint in case No. BC380048 also sets forth causes of action based upon the alleged breach of both agreements. These overlapping issues are sufficient to support the trial court's order staying case No. BC380048 pending the arbitration ordered in case No. BC372414. (*Heritage Provider Network, Inc. v. Superior Court, supra*, 158 Cal.App.4th at pp. 1152–1153.)

Because the trial court ordered arbitration of a controversy which is an issue involved in case No. BC380048, the order staying case No. BC380048 was mandatory. Moreover, it was necessary to preserve the status quo until the arbitration ordered in case No. BC372414 is resolved. (*Federal Ins. Co. v. Superior Court* (1998) 60 Cal.App.4th 1370, 1374 [71 Cal.Rptr.2d 164] [purpose of the statutory stay is to protect the jurisdiction of the arbitrator by preserving the status quo until arbitration is resolved].) To allow Cardiff to litigate case No. BC380048 in the trial court would disrupt the arbitration

proceedings and render them ineffective. (60 Cal.App.4th at p. 1375 ["In the absence of a stay, the continuation of the proceedings in the trial court disrupts the arbitration proceedings and can render them ineffective."].)

For these reasons, I would deny the petition and hold that Cardiff's procedural tactics did not vitiate the order compelling arbitration and that the trial court's stay of case No. BC380048 was mandatory and therefore appropriate.