[No. B201298. Second Dist., Div. Seven. Jan. 14, 2008.]

HERITAGE PROVIDER NETWORK, INC., et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
EASTLAND MEDICAL GROUP, INC., Real Party in Interest.

### Counsel

Bingham McCutchen, Jonathan S. Gluck, Melissa Fien, Thomas S. Hixson and Tanya King Dumas for Petitioners.

No appearance for Respondent.

The Hernandez Law Group, Don A. Hernandez, Robert A. Olson and Agnes Markarian for Real Party in Interest.

### Opinion

**PERLUSS, P. J.**—Following failed negotiations regarding the potential purchase of Eastland Medical Group, Inc. (Eastland), by Heritage Provider Network, Inc. (Heritage), Eastland sued Heritage, two related medical groups, Regal Medical Group, Inc. (Regal), and West Covina Plan IPA, Inc. (Covina), and four individual physicians who had terminated their relationship with Eastland and entered into agreements with Heritage. Eastland's complaint alleged causes of action for breach of contract against the medical groups and the doctors and for inducing breach of contract and improper disclosure of confidential information and trade secrets against the medical groups.

After the physicians successfully moved to compel arbitration of Eastland's breach of contract claims, the trial court denied Heritage and Regal's motion to stay the litigation notwithstanding its finding that similar issues were

involved in the arbitration and court proceedings. Because Code of Civil Procedure section 1281.4[1] mandates a stay of judicial proceedings pending completion of the arbitration in these circumstances, we grant Heritage and Regal's petition for writ of mandate and direct respondent superior court to vacate its order denying the motion to stay the action pending the conclusion of arbitration proceedings and to issue a new order granting the motion.

## FACTS AND PROCEDURAL BACKGROUND

### 1. *The Complaint*

Eastland is a professional medical corporation that operates as an independent practice association (commonly referred to as an IPA) consisting of approximately 150 primary care and 280 specialist physicians who provide health care in the San Gabriel and Pomona Valleys and the Inland Empire.[2] In connection with discussions about the potential purchase of Eastland by Heritage, a corporation that contracts with health plans to provide care to health plan members, Eastland and Heritage executed a confidentiality agreement on November 6, 2006, prohibiting Heritage from disclosing Eastland's confidential information "to or for the benefit of any person or entity other than [Heritage]."[3]

After the acquisition negotiations foundered, a number of physicians terminated their contracts with Eastland and entered new agreements with

---

[1] Statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] IPA's contract with health maintenance organizations (HMO's) to provide medical care to HMO members. The IPA's, which provide administrative services such as the credentialing of physicians and eligibility verification of the HMO's members, then contract with medical professionals to treat members. The medical professionals are typically deemed independent contractors responsible for their own separate medical practices.

[3] The agreement states, " **'Confidential Information'** means commercial information about [Eastland's] internal affairs which [Eastland] identifies as confidential or which a reasonable person should judge is not to be disclosed to competitors, person who do not need to know or use it, or the public. Confidential information includes, without limitation, Protected Health Information, Trade Secrets and Proprietary and Intellectual Property/ies. [¶] A **'Trade Secret'** is Confidential Information that gives [Eastland] a Competitive Advantage over a competitor, and which if disclosed would harm [Eastland's] business by the loss of such advantage. [¶] **'Proprietary Property'** includes (a) Trade Secrets[;] (b) [Eastland's] 'Documents' containing protected information; (c) payors, providers, and enrollee names and addresses, procedures, accounting and financial information, sales and marketing data; projections; and (d) copies or other likeness of the foregoing."

Heritage. On December 14, 2006 Eastland filed a complaint against Heritage, two allegedly affiliated IPA's, Regal and Covina,[4] and four physicians with whom Eastland had contracted to provide medical services "to prevent the destruction of its network of primary care physicians."[5] In its first cause of action Eastland alleged Heritage had breached the confidentiality agreement by disclosing to Regal and Covina Eastland's confidential information, including the number and identity of Eastland's health plan members, the identities of Eastland's primary care physicians and the financial terms of Eastland's contracts with both its physicians and the health plans.

In the second cause of action, which it only asserted against the physicians, Eastland alleged the physicians had each breached the primary care physician provider agreement (PCP agreement) they had entered into with Eastland, which proscribes use or disclosure of Eastland's trade secrets for any purpose other than that which is medically necessary to provide services to Eastland's health plan members.[6] Eastland alleged the physicians wrongfully disclosed to Heritage, Regal and/or Covina confidential information regarding Eastland's plan members as well as contract terms between the physicians and Eastland, including the amount of capitation payments Eastland paid them[7] and the services that were excluded from the capitation agreement.[8] Eastland further alleged the physicians had breached the PCP agreement by failing to provide sufficient notice of termination. Finally, Eastland alleged the PCP agreement prohibits the physicians from soliciting Eastland health plan members and then, in the fifth and sixth causes of action, alleged

---

[4] Eastland, stating it did not know the exact nature of the relationship among Heritage, Regal and Covina, alleged on information and belief that Regal shares some ownership with Heritage and that Covina operates as a "mini-IPA" within Regal. In its petition for writ of mandate Heritage asserts it owns and contracts with Regal. Covina is not a party to this writ proceeding.

[5] In a first amended complaint filed after the trial court ordered arbitration of Eastland's claims against the physicians, only three of the original four physicians were named as defendants.

[6] Although the complaint states the third through sixth causes of action are asserted "against all defendants," based on the wording of the complaint and the manner in which the parties treat those causes of action in this writ proceeding, it appears all parties agree only the second cause of action for breach of contract is asserted against the physicians.

[7] A capitation payment is a fee paid to the health service provider for each health plan member assigned to it.

[8] According to the complaint, the PCP agreement defines as a trade secret, among other things, "the names of or data relating to any of [Eastland's] current or potential health plan members, . . . [Eastland's] provider contract terms . . . or any other confidential information of, about, or concerning the business of [Eastland]."

Heritage and Regal induced the physicians to breach their contract by persuading them to do just that. Even though Eastland does not expressly allege in its breach of contract cause of action that the physicians wrongfully solicited Eastland's health plan members, in the proceedings before the trial court and in this writ proceeding, all parties have considered this one of the bases for the contract claim. For example, in its return by answer to the order to show cause, Eastland states it "has alleged two material breaches by the physicians: solicitation and disclosure of confidential information."

Based upon Heritage's use and disclosure of Eastland's confidential information allegedly obtained during the parties' negotiations, Eastland alleged claims against Heritage, Regal and Covina for violation of the Uniform Trade Secrets Act, Civil Code section 3426 et seq. (third cause of action), intentional interference with contractual relations (fourth cause of action), intentional interference with prospective economic advantage (fifth cause of action) and violation of Business and Professions Code section 17200 (sixth cause of action). An allegation common to these claims is that Heritage, Regal and Covina induced the physicians to breach their PCP agreements by terminating them immediately, rather than upon 90 days' notice, by disclosing Eastland's confidential information and, as discussed above, by soliciting Eastland's health plan members.

2. *Grant of the Physicians' Petition to Compel Arbitration; Denial of the IPA's Motion to Stay; and the Writ Petition*

The physicians' motion to compel arbitration pursuant to the arbitration provision in the PCP agreement was granted on June 4, 2007. Arbitration was scheduled for December 17, 2007.

On July 16, 2007 the trial court denied Heritage and Regal's motion to stay the remainder of the litigation pending the outcome of the arbitration.[9] The court stated, "I'm not finding that there are no similar issues or no issues that aren't exactly the same. But I am finding that not all issues are the same, and in the balance of things there's not enough similar issues to stay the civil litigation while the arbitration's pending." Disagreeing with Heritage and

---

[9] Although the court orally denied the motion at a hearing on July 16, 2007, a written order denying the motion was not filed until August 9, 2007.

Regal's contention one common issue was sufficient to mandate a stay, the court observed, "If all it takes is one same issue then it should be an easy writ to get and I won't take offense if I'm wrong."

Heritage and Regal petitioned this court for a writ of mandate compelling the trial court to vacate its order denying their motion for a stay and to issue a new order granting the motion. Heritage and Regal also sought an immediate stay of the trial court proceedings. On October 2, 2007, we issued an order to show cause why the requested relief should not be granted and the following week stayed all trial court proceedings.

## DISCUSSION

When a trial court "has ordered arbitration of a controversy which is an issue involved in an action or proceeding pending before" the court, it "shall, upon motion of a party . . . stay the action or proceeding until an arbitration is had in accordance with the order to arbitrate . . . ." (§ 1281.4.)[10] "It is irrelevant under the statute whether the movant is a party to the arbitration agreement." (*Marcus v. Superior Court* (1977) 75 Cal.App.3d 204, 209 [141 Cal.Rptr. 890].) Any party to a judicial proceeding "is entitled to a stay of those proceedings whenever (1) the arbitration of a controversy has been ordered, and (2) that controversy is also an issue involved in the pending judicial action." (*Ibid.*) "The purpose of the statutory stay is to protect the jurisdiction of the arbitrator by preserving the status quo until arbitration is resolved." (*Federal Ins. Co. v. Superior Court* (1998) 60 Cal.App.4th 1370, 1374 [71 Cal.Rptr.2d 164] (*Federal Ins.*).) "In the absence of a stay, the continuation of the proceedings in the trial court disrupts the arbitration proceedings and can render them ineffective." (*Id.* at p. 1375.)

The trial court's belief one overlapping issue was insufficient to justify imposition of a stay was incorrect. Section 1280, subdivision (c), defines "controversy" as "any question arising between parties to an agreement whether such question is one of law or of fact or both." Neither section 1280 nor section 1281.4 is written in the plural: A controversy can be a single

---

[10] Section 1281.4 provides, "If a court of competent jurisdiction, whether in this State or not, has ordered arbitration of a controversy which is an issue involved in an action or proceeding pending before a court of this State, the court in which such action or proceeding is pending shall, upon motion of a party to such action or proceeding, stay the action or proceeding until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies. [¶] . . . [¶] If the issue which is the controversy subject to arbitration is severable, the stay may be with respect to that issue only."

question of law or fact, and a stay *shall* be issued upon proper motion if the court has ordered arbitration of a controversy that is also an issue involved in an action or proceeding pending before it. (See *Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 443 [261 Cal.Rptr. 574, 777 P.2d 610] [word "shall" is ordinarily construed as mandatory, while "may" is ordinarily construed as permissive].) Thus, a single overlapping issue is sufficient to require imposition of a stay. Of course, in order to preserve the goal of arbitration as a "speedy and relatively inexpensive method of resolving disputes" (*Federal Ins., supra,* 60 Cal.App.4th at p. 1374) without unduly prejudicing parties who have not agreed to arbitration or who have agreed to arbitrate only certain issues, "[i]f the issue which is the controversy subject to arbitration is severable, the stay may be with respect to that issue only." (§ 1281.4, 3d par.; see *Federal Ins.,* at p. 1375 [party seeking severance and limited stay under § 1281.4 must "prove that his or her claim is *independent* from the matter in arbitration"].)[11]

As discussed, the trial court found the controversy between Eastland and the physicians ordered to arbitration shared at least one issue with Eastland's claims against Heritage and Regal. The motion for stay was denied not because there was no finding of any overlap but because the trial court erroneously believed it had discretion to deny the stay if it concluded there were "not enough similar issues." Notwithstanding the trial court's findings, Eastland contends the similarities between the breach of contract claim against the physicians and its remaining claims against Heritage and Regal are only superficial. It asserts there are no overlapping legal issues and the only common factual issue is that the physicians were among the many targets of Heritage and Regal's campaign to compete unfairly with Eastland.

Eastland's argument is belied by the allegations in its own complaint. In its claim for intentional interference with contractual relations, Eastland alleged Heritage and Regal induced the physicians to breach their PCP agreements by terminating them without 90 days' notice and by disclosing Eastland's

---

[11] In addition to seeking a severance of the issue subject to arbitration and the limitation of any stay to that issue only pursuant to section 1281.4, third paragraph, in its opposition to a motion to compel arbitration a party may ask the trial court pursuant to section 1281.2, subdivision (c), fourth paragraph, to refuse to enforce the arbitration agreement or to stay any arbitration proceedings pending the outcome of the court action. (See *Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 380 [25 Cal.Rptr.3d 540, 107 P.3d 217] ["section 1281.2, subdivision (c) permits a trial court, under specified circumstances, to stay arbitration pending the outcome of related litigation"].)

confidential information. Moreover, as previously discussed, the parties have considered as one ground for Eastland's breach of contract claim against the physicians that they wrongfully solicited Eastland's health plan members. Whether the physicians did so is also asserted as one aspect of the wrongful conduct underlying Eastland's claim for intentional interference with prospective business advantage alleged against Heritage and Regal. The complaint alleged, "Defendants' wrongful conduct includes, but is not limited to the following: [¶] . . . [¶] (e) Defendants induced breach of contract by physicians by persuading them to unlawfully solicit Eastland's health plan members for the purpose of obtaining a competitive advantage over Eastland." Similarly, in support of its claim for unfair competition in violation of Business and Professions Code section 17200 Eastland alleged Heritage and Regal "have undertaken the following unlawful, unfair and/or fraudulent business acts or practices in an effort to injure Eastland: [¶] . . . [¶] (c) Induced breach of contract by physicians by persuading them to unlawfully solicit Eastland's health plan members for the purpose of obtaining a competitive advantage over Eastland."

■ To circumvent the implication of these clearly overlapping allegations, Eastland asserts it need not prove the physicians in fact breached their PCP agreements to state a claim for intentional interference with contractual relations (see *Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1129 [270 Cal.Rptr. 1, 791 P.2d 587] ["[p]laintiff need not allege an actual or inevitable breach of contract in order to state a claim for disruption of contractual relations"]) or wrongfully solicited Eastland's health plan members to prevail on its claims for interference with prospective business advantage and unfair competition. Eastland argues it has alleged other wrongful conduct, such as Heritage's breach of the nondisclosure agreement and the misappropriation of Eastland's trade secrets, that, if proved, would support these claims. Although Eastland may be able to prevail without showing an actual breach of contract by the physicians, the fact remains that Eastland alleged conduct that is clearly the subject of the arbitration with the physicians in support of its tort claims against Heritage and Regal. The trial court reasonably concluded overlapping issues exist in the controversy between Eastland and the physicians that was ordered to arbitration and the remaining claims between Eastland and the medical groups. Accordingly, it was error for the trial court to deny the motion for a stay. (§ 1281.4.)[12]

---

[12] Because the trial court denied Heritage and Regal's motion to stay, the court did not reach Eastland's alternative argument the issues subject to arbitration should be severed and any stay ordered limited to the overlapping issues. (§ 1281.4, 3d par.) Eastland may renew this argument in the trial court.

## DISPOSITION

The petition is granted, and a peremptory writ of mandate shall issue directing respondent superior court to vacate its order denying Heritage and Regal's motion to stay the court action pending conclusion of the arbitration proceedings and to enter a new order granting the motion in accordance with the views expressed in this opinion. Heritage and Regal are to recover their costs in this proceeding.

Zelon, J., and Wiley, J.,* concurred.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.