Filed 11/20/23 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MATTSON TECHNOLOGY, INC., <br>    Plaintiff and Appellant, <br> v. <br> APPLIED MATERIALS, INC., <br>    Defendant and Respondent. | A165378 <br><br> (Alameda County <br> Super. Ct. No. 22CV007997) <br><br> **ORDER DENYING APPELLANT'S PETITION FOR REHEARING AND MODIFYING OPINION** <br><br> **[NO CHANGE IN JUDGMENT]** |

**BY THE COURT:**

Appellant's petition for rehearing is DENIED. The opinion filed on November 1, 2023, shall be MODIFIED as follows:

1. On page two, the following sentence in the third full paragraph (Background A.) is deleted:

   "Many were highly placed executives or engineers; 10 were from Lai's Dielectric Deposition Products group."

   The sentence is replaced as follows:

   "Many were highly placed executives or engineers."

2. On page 10, the word "trial" is inserted into the first sentence of the first full paragraph so that the sentence reads as follows:

   "The trial court reasonably found otherwise."

1

3. On page 10, the following sentence in the second full paragraph is deleted:

> "And he was one of numerous Applied employees Mattson had recently recruited, many of whom worked in an area it targeted for expansion and many of whom wiped their Applied phones before leaving and tried to conceal their new employer's identity."

The sentence is replaced as follows:

> "And he was one of numerous Applied employees Mattson had recently recruited, many of whom wiped their Applied phones before leaving and tried to conceal their new employer's identity."

The modifications make no change to the judgment.

BURNS, J.

WE CONCUR:

JACKSON, P.J.
SIMONS, J.

*Mattson Technology, Inc. v. Applied Materials, Inc.* (A165378)

Alameda County Superior Court, No. 22CV007997, Hon. Evelio M. Grillo

Complex Appellate Litigation Group LLP, Rex Heinke and Ben Feuer; Singer Cashman LLP, Adam S. Cashman, Benjamin L. Singer, and Doug Tilley, for Plaintiff and Appellant.

King & Spalding LLP, Quyen L. Ta, Arwen R. Johnson, and Suzanne E. Nero; James Pooley PLC, James Pooley; Gibson Dunn, Blaine Evanson, for Defendant and Respondent.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MATTSON TECHNOLOGY, INC., Plaintiff and Appellant, v. APPLIED MATERIALS, INC., Defendant and Respondent. | A165378 (Alameda County Super. Ct. No. 22CV007997) |

After many years at Applied Materials, Inc. (Applied), Canfeng Lai left for a new job at Mattson Technology, Inc. (Mattson).  First, however, he emailed himself a number of files containing Applied trade secrets.  Applied sued both Lai and Mattson for violating the Uniform Trade Secrets Act (Civ. Code, § 3426 et seq.; the Act)[1] and, as against Lai, for breaching his employment contract.  The court granted Lai's motion to compel arbitration under the arbitration clause in his employment contract but rejected Mattson's claim that it, too, was entitled to arbitrate.  It then denied Mattson's motion to stay the litigation pending Lai's arbitration and issued a preliminary injunction to protect Applied's confidential information pending the proceedings.

Mattson asserts all of these ruling were erroneous.  We agree only in part.  The court correctly found that Mattson, as a nonparty to Lai's employment contract with Applied, could not compel Applied to arbitrate against it.  It also properly issued the

---

[1] Undesignated statutory references are to the Civil Code.

preliminary injunction. However, it erred in declining to stay the litigation against Mattson pending arbitration of its claims against Lai.

## BACKGROUND

### A.

After a 15-year stint with Applied ending in 2012, Lai returned to work as an Electrical Engineering Director in its Dielectric Deposition Products group from September 2018 to February 2022. Lai's group works on products used for manufacturing semiconductor chips. His position gave him access to many of Applied's trade secrets, such as scientific and experimentation data and 3D renderings of semiconductor manufacturing tools. He also participated in highly confidential meetings with his team, Applied executives, and other Applied engineering groups.

Mattson, a core subsidiary of Beijing E-Town Semiconductor Technology Co., Ltd., is a direct competitor of Applied. It, too, produces equipment for making semiconductor chips and, in particular, for "etching" – the selective removal of electrically insulating layers that had been added through a process called deposition. While Mattson does not produce equipment for deposition, Beijing E-Town publicly announced its intention to expand into that market after acquiring Mattson in 2016.

Over a 14-month period starting in January 2021, Mattson recruited 17 of Applied's employees. Many were highly placed executives or engineers; 10 were from Lai's Dielectric Deposition Products group. Upon leaving Applied, most of them wiped and restored their Applied iPhones to factory settings and evaded telling Applied they were going to Mattson; some even lied about their new employer's identity.

2

In early February 2022, Lai accepted a job offer from Mattson. A week later he told Applied he was leaving, but, like others before him, refused to identify his new employer at that time.

Before his last day at Applied, Lai accessed proprietary information from Applied's cloud-based storage system. Using his laptop, he sent over a dozen e-mails attaching highly confidential Applied documents—many of them clearly marked as such—to two personal email accounts. Then, in his final days at Applied, he accessed scores of additional highly sensitive files. Nonetheless, he signed a separation certificate stating he had not retained any Applied information and confirmed this in two separate exit interviews (at which he acknowledged he was leaving to join Mattson). Because he wiped his work phone before returning it, Applied could not determine whether he had used it to send himself additional material. After starting his new job, Lai logged into both of his personal email accounts on his Mattson computer.

Lai admitted this conduct under penalty of perjury, and that he had not been "forthcoming" about it during his exit process. He had taken the documents, he explained, "principally to keep 'souvenirs' of [his] accomplishments at the company," not to use or disclose any confidential Applied information in his new job. Later, however, he admitted some of those "souvenirs" had nothing to do with his work at Applied but did relate to his new position at Mattson.

Both defendants have consistently maintained that Lai never disclosed any Applied information to Mattson. Mattson denies any knowledge of or involvement in Lai's actions.

## B.

Applied sued Mattson and Lai and moved for a temporary restraining order. The complaint stated two causes of action:

3

misappropriation under the Act against both defendants, and, as against Lai, breach of his employment agreement. The trial court granted a temporary restraining order enjoining Mattson and Lai from accessing, using, or altering any Applied trade secrets pending further proceedings.

Upon learning of the lawsuit, Lai immediately deleted the emails he had sent to his Yahoo account. (He later explained he would have done the same with his Gmail account if he had remembered to.) Then, after communicating with Mattson's lawyers, he downloaded a confidential Applied document to his Mattson laptop before deleting it a moment later.

Shortly afterward, Mattson put Lai on leave and had a forensic computer examiner cut off his access to both of his personal email accounts and sequester his iPhone, his Mattson and personal laptops, and his personal desktop computer.

Mattson and Lai moved to compel arbitration and stay the court proceedings based on the arbitration clause in the Applied-Lai employment contract. The court granted the motion to compel as to Applied's action against Lai; denied it as to Mattson; denied Mattson's motion to stay the litigation pending arbitration; and issued a preliminary injunction prohibiting Lai and Mattson from accessing or using Applied's confidential information pending resolution of its claims.

## DISCUSSION

### A.

Mattson is not a party to the arbitration agreement between Lai and Applied. It contends, however, that principles of equitable estoppel require Applied to arbitrate its misappropriation claim against the company. The facts are not in dispute, so we review the trial court's denial of arbitration de novo. (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 126; *Thomas v. Westlake* (2012) 204 Cal.App.4th 605, 613.)

4

Generally, only signatories to a contract are bound by or may invoke its arbitration clause. (*Goldman v. KPMG, LLP* (2009) 173 Cal.App.4th 209, 234 (*Goldman*).) Arbitration is a matter of contract, and the threshold question for a court is whether an agreement between the parties exists. (Code Civ. Proc., § 1281.2.)

Equitable estoppel provides a limited exception to this general rule. When a signatory to a contract asserts claims against a non-signatory that rely upon, or are inextricably bound up with, the contract terms, the non-signatory may invoke an arbitration clause in the same contract. (*Pacific Fertility Cases* (2022) 85 Cal.App.5th 887, 893; *Goldman, supra,* 173 Cal.App.4th at pp. 219, 221-225.)

This makes sense. As a matter of fairness, when a party to a contract seeks to hold a non-signatory defendant liable for obligations imposed by the contract, the party cannot evade an arbitration clause in the contract simply because the defendant is a non-signatory. (See *Pacific Fertility Cases, supra,* 85 Cal.App.5th at pp. 892-893; *UFCW & Employers Benefit Trust v. Sutter Health* (2015) 241 Cal.App.4th 909, 929-930 (*UFCW*); *DMS Services, LLC v. Superior Court* (2012) 205 Cal.App.4th 1346, 1354.) It's a two-way street.

Keeping this policy in mind helps define the limits of the rule. It is not enough that a complaint simply refers to a contract; the claims must be founded on the contract. (*UFCW,* supra, 241 Cal.App.4th at pp. 930-931; *Goldman, supra,* 173 Cal.App.4th at pp. 218-219.) Nor is it sufficient that a complaint alleges collusion between a signatory and non-signatory defendant (*Goldman, supra,* at pp. 218-219), or that the controversy would not have occurred but for the existence of the contract, provided the contract is not the basis for the claims against the non-signatory. (*UFCW, supra,* at p. 930; *Pacific Fertility*, *supra*, 85 Cal.App.5th at p. 896) In these situations, the

5

policy rationale for equitable estoppel—"relying on an agreement for one purpose while disavowing the arbitration clause of the agreement"—does not exist. (*Goldman, supra,* at p. 230.)

*Waymo LLC v. Uber Techs., Inc* (N.D. Cal. 2017) 252 F.Supp.3d 934 (*Waymo I*), applied these principles to facts very like those here. Levandowski, a former Waymo employee, allegedly misappropriated Waymo trade secrets for the benefit of a competitor, Uber. Waymo sued Uber under several state and federal statutes, and it initiated arbitration proceedings against Levandowski based on an arbitration provision in his employment agreement (*Id.* at p. 936; *Waymo LLC v. Uber Techs., Inc.* (Fed. Cir. 2017) 870 F.3d 1342, 1343-1344 (*Waymo II*) [affirming *Waymo I*].)

Uber moved to compel Waymo to arbitrate its claims against the company as well. The federal court denied the motion. Applying California law, it found those claims did not rely on the terms of Levandowski's employment contract; to the contrary, Waymo expressly forswore reliance on the contract to prove its misappropriation claims against Uber. (*Waymo I, supra,* 252 F.Supp.3d at p. 938.) Waymo's allegations of collusion between Levandowski and Uber were also inadequate: " '[i]t is the relationship of the claims [to the contract], not merely the collusive behavior of the signatory and nonsignatory parties, that is key.' " (*Id.* at p. 939.) Finally, while the complaint referred to Waymo's contractual confidentiality provisions to demonstrate its efforts to maintain secrecy (see *Cypress Semiconductor Corp. v. Superior Court* (2008) 163 Cal.App.4th 575, 588 [trade secrets lose protected status if owner does not take reasonable steps to maintain secrecy]), the misappropriation claims themselves did not rely on the contract. (*Waymo I, supra,* at p. 938, citing *Goldman, supra,* 173 Cal.App.4th at p. 218; see also *Waymo II, supra*, 870 F.3d at pp. 1346-1349.)

So too here. Applied alleges Mattson violated the Act by knowingly misappropriating its confidential information. That statutory claim exists without regard to Lai's contractual obligations to Applied, and, as in *Waymo I*, Applied has disavowed any reliance on the contract to prove its case against Mattson. (*Waymo I, supra,* 252 F.Supp.3d at p. 938; *Goldman, supra,* 173 Cal.App.4th at pp. 219, 221.) As in *Waymo I*, the complaint refers to Applied's employment contracts (among other policies and safeguards) to demonstrate its efforts to maintain secrecy, but the claim against Mattson does not rely on the contracts. Mattson points to the complaint's allegation that Mattson "knew or had reason to know" that the stolen information was subject to ongoing confidentiality obligations, but the complaint does not cite or rely on a contract for this allegation; the same obligations arise from statutory and common law. (See Lab. Code, § 2860; *KGB, Inc. v. Giannoulas* (1980) 104 Cal.App.3d 844, 855.) Accordingly, the policy rationale for estoppel does not apply. Applied is not selectively enforcing against Mattson the trade secret provisions of Lai's employment contract while trying to avoid its arbitration clause. *(UFCW, supra*, 241 Cal.App.4th at p. 930.)

Mattson's remaining authorities are unpersuasive. In *Uptown Drug Co. v. CVS Caremark Corp.* (N.D. Cal. 2013) 962 F.Supp.2d 1172, 1185-1186, the plaintiff's claims against the non-signatory *did* rely on its contract with the signatory defendant. In *Felisilda v. FCA US LLC* (2020) 53 Cal.App.5th 486, 490, 497, the court held that, unlike here, the plaintiff expressly agreed to arbitrate the controversy with the non-signatory defendant.[2]

---

[2] Other courts have disagreed with *Felisilda* on whether the type of contract at issue (a sales contract with a car dealer) includes warranties from the non-signatory car manufacturer, and our Supreme Court has agreed to review the issue. (See, e.g., *Montemayor v. Ford Motor Co.* (2023) 92 Cal.App.5th 958, 968-972, review granted Sept. 20, 2023, S281237; *Ford Motor*

7

*Chartwell Staffing Servs. v. Atl. Solutions Grp, Inc.* (C.D. Cal., Jan. 9, 2020, No. 8:19-cv-00642-JLS-JDE) 2020 WL 620294 has been aptly criticized as misapplying California's equitable estoppel doctrine. (See *Cisco Sys. v. Wilson Chung* (N.D. Cal. 2020) 462 F.Supp.3d 1024, 1042.) Mattson cites other cases in which there was either an agency relationship or virtual identity between the signatory and non-signatory defendants. (See *Garcia v. Pexco, LLC* (2017) 11 Cal.App.5th 782, 788 [agency relationship between staffing agency and its client company; plaintiff employee brought identical claims against both as "joint employers"]; *CardioNet, LLC v. InfoBionic, Inc.* (D. Mass. Mar. 24, 2017, No. 1:15-cv-11803-IT) 2017 WL 1115153, *1 [former employee sued for trade secret misappropriation was founder and chief technology officer of non-signatory defendant]; *Oren Enterprises, Inc. v. Stefanie Cove & Co.* (C.D. Cal. June 2, 2017, No. CV 17-3619 PA (AFMx)) 2017 WL 8220230, *1 [one of two former employees sued for misappropriation founded non-signatory defendant company].) To the extent these cases resemble this case, we decline to follow them.

Finally, the trial court noted additional policy concerns stemming from Mattson's position: "Mattson's argument, if accepted, would be tantamount to holding that any company that hired any person who signed an arbitration agreement with his or her former employer could selectively and defensively assert the arbitration agreement to deny access to the courts by an aggrieved party who seeks to vindicate their statutory rights under [the Act]. This would effectively mean that any disputes between the former and the current employer would have to be resolved in arbitration even though the former employer did not agree to arbitrate any dispute with a third party," and even where, as here, the trade secret claim does not rely on the

_____

*Warranty Cases* (2023) 89 Cal.App.5th 1324, 1333-1335, review granted July 19, 2023, S279969.)

employment contract.  Mattson offers no meaningful response to this.

We therefore affirm the order denying Mattson's motion to compel arbitration.  We do not reach Applied's additional argument that the arbitration agreement expressly excludes parties other than Lai from its scope.

## B.

Next, Mattson argues the trial court erred in issuing the preliminary injunction prohibiting it from accessing or using any confidential information Lai took from Applied.  Here, too, we are unpersuaded.

Trial courts evaluate two related factors to assess a request for a preliminary injunction: (1) the likelihood the plaintiff will prevail on the merits at trial, and (2) the likely interim harm to the plaintiff without the injunction as compared to the harm to the defendant with it.  (*Ryland Mews Homeowners Assn. v. Munoz* (2015) 234 Cal.App.4th 705, 711 (*Ryland Mews*).)  On appeal from the grant of an injunction, we review the court's legal determinations de novo and its factual findings for substantial evidence, interpreting the evidence in the light most favorable to the plaintiff and indulging in all reasonable inferences in support of the trial court's order.  The ultimate decision rests in the trial court's discretion and will not be reversed unless it exceeds the bounds of reason or contravenes uncontradicted evidence. (*Ryland Mews, supra,* at pp. 711-712; *Midway Venture LLC v. County of San Diego* (2021) 60 Cal.App.5th 58, 76-77.)

## 1.

Mattson asserts Applied failed to establish a likelihood of prevailing against it on the merits because it offered no direct evidence Mattson was involved in or aware of Lai's misdeeds.  In Mattson's view, rather, Applied could establish nothing more than Lai's acts, unconnected to any participation by his new

9

employer. (See *FLIR Systems, Inc. v. Parrish* (2009) 174 Cal.App.4th 1270, 1279 [departing employee's possession of trade secrets alone is insufficient for injunctive relief].)

The court reasonably found otherwise. The Act expressly authorizes the enjoining of threatened, as well as actual, misappropriation. (§ 3426.2, subd. (a); *FLIR Systems, Inc. v. Parrish, supra,* 174 Cal.App.4th at p. 1279 [threatened misappropriation is threat to misuse trade secrets manifested by words or conduct, where evidence indicates imminent misuse].) Threatened misappropriation may occur when trade secrets are in the possession of someone who has misused or disclosed some of those secrets in the past or who intends to do so. (*Central Valley General Hospital v. Smith* (2008) 162 Cal.App.4th 501, 527-528.) Circumstantial proof is sufficient, and frequently necessary, to prove this. (*SI Handling Sys. v. Heisley* (3d Cir. 1985) 753 F.2d 1244, 1261; see *Ajaxo Inc. v. E\*Trade Group Inc.* (2005) 135 Cal.App.4th 21, 50-53.)

Applied provided such circumstantial proof. Starting the day after accepting Mattson's job offer, Lai accessed and sent himself highly sensitive Applied information that would benefit Mattson. He repeatedly lied to Applied about possessing its information and wiped his phone, making it difficult or impossible to confirm whether he had used it to send any Applied data or documents. And he was one of numerous Applied employees Mattson had recently recruited, many of whom worked in an area it targeted for expansion and many of whom wiped their Applied phones before leaving and tried to conceal their new employer's identity.

Interpreting this evidence in the light most favorable to Applied and indulging in all reasonable inferences in support of the trial court's order (*Ryland Mews, supra,* 234 Cal.App.4th at p. 712), the trial court's evaluation of Applied's likelihood of successfully establishing Mattson was involved in at least

10

threatened misappropriation neither exceeded the bounds of reason nor contravened uncontradicted evidence. (*Id.* at p. 711.)

## 2.

As to the second factor, the relative balance of harms, Mattson asserts the preliminary injunction is (1) so broadly worded that it "arguably" puts Mattson at risk of accidental violations, or (2) improperly binds Lai's hypothetical future employers and other nonparties to this litigation. Mattson has not identified, and we have not discovered, any point at which it raised these issues in the trial court. It is not this court's job to search through the record in an effort to discover a point purportedly made. (*In re S.C.* (2006) 138 Cal.App.4th 396, 406; *Berger v. Godden* (1985) 163 Cal.App.3d 1113, 1117, fn. 2; Cal. Rules of Court, rule 8.204(a)(1)(C).) Accordingly, the issue is forfeited in this court. (*Kern County Dept. of Child Support Services v. Camacho* (2012) 209 Cal.App.4th 1028, 1038.)

Mattson's assertion that the injunction may harm its reputation by wrongly implying "some evidence exists that it engaged in wrongdoing" is not persuasive. The point is so broad it would apply equally any time a court temporarily enjoins any potential misappropriation pending trade secret litigation. In any event, it was within the court's discretion to find on the evidence presented in *this* case that the potential harm to Applied from the disclosure or use of its trade secrets outweighed the potential harm to Mattson's reputation.

## C.

Mattson's contention that the court erred in declining to stay the litigation against it pending the outcome of Applied's arbitration with Lai rests on firmer ground.

11

After the court declined to compel Applied to arbitrate with Mattson, both defendants moved to stay the court proceedings pending Lai's arbitration. The court stayed the litigation against Lai, but found Applied's claim against Mattson was severable from its claims against Lai and declined to stay it.

Code of Civil Procedure section 1281.4 provides: "If a court of competent jurisdiction. . . has ordered arbitration of a controversy which is an issue involved in an action or proceeding pending before a court of this State, the court . . . shall . . . stay the action or proceeding until an arbitration is had in accordance with the order to arbitrate." The word "shall" is mandatory. (*Twentieth Century Fox Film Corp. v. Superior Court* (2000) 79 Cal.App.4th 188, 192 (*Twentieth Century Fox*) [denial of motion to stay exceeded court's authority].) The purpose is to protect the arbitrator's jurisdiction by preserving the status quo until the arbitration is resolved. (*Federal Ins. Co. v. Superior Court* (1998) 60 Cal.App.4th 1370, 1374)

A " '[c]ontroversy' " in this context is "any question arising between parties to an agreement whether the question is one of law or of fact or both." (Code Civ. Proc., § 1280, subd. (d).) A single overlapping question of law or fact may qualify as a "controversy" sufficient to require imposition of a stay. (*Heritage Provider Network, Inc. v. Superior Court* (2008) 158 Cal.App.4th 1146, 1152-1153; *Cardiff Equities, Inc. v. Superior Court* (2008) 166 Cal.App.4th 1541, 1552.) However, "[i]f the issue which is the controversy subject to arbitration is severable," the court has the discretion to sever and stay proceedings on the arbitrable claims and permit any nonarbitrable issues to proceed in court. (Code Civ. Proc., § 1281.4; see *Jarboe v. Hanlees Auto Group* (2020) 53 Cal.App.5th 539, 556; *Heritage Provider Network, Inc. v. Superior Court, supra,* at p. 1153.) The party seeking severance under Code of Civil Procedure section 1281.4 has the burden of proving its claim is independent from the arbitrable

matter. *(Twentieth Century Fox, supra,* 79 Cal.App.4th at p. 192; *Federal Ins. Co. v. Superior Court, supra,* 60 Cal.App.4th at p. 1375.)

The question, then, is whether Applied satisfied that burden. We review the court's determination for abuse of discretion (*Jarboe v. Hanlees Auto Group, supra,* 53 Cal.App.5th at p. 547), keeping in mind the scope of that discretion always depends on the particular law being applied; decisions that "transgress[] the confines of the applicable principles of law" are beyond it. (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297.)

We cannot agree that Applied's claim against Mattson under the Act is independent of the same claim against Lai. (See *Twentieth Century Fox, supra,* 79 Cal.App.4th at p. 192.) The complaint makes no attempt to distinguish the factual bases for those claims; to the contrary, it relies on the same factual allegations against both defendants to depict a scheme whereby Mattson recruited Lai to provide it with Applied's trade secrets. For good reason. To prevail on its misappropriation claim against Lai, Applied must prove he acquired its confidential information by improper means.[3] (§ 3426.1, subds. (b)(1), (b)(2).) To prevail against Mattson, Applied must essentially prove its competitor obtained its confidential information from Lai with actual or constructive knowledge that he obtained it improperly (§ 3426.1, subd. (b)(1)) or that he owed Applied a duty to maintain its secrecy (§ 3426.1, subd. (b)(2)(B)(iii)); or that Mattson obtained the information by inducing Lai to breach that duty of secrecy. (§ 3426.1, subds. (a), (b)(1).) The trade secret claims against Lai and Mattson thus share common factual

---

[3] The statute defines improper means to include theft and breach or inducement of a breach of a duty to maintain secrecy. (§ 3426.1, subd. (a).)

questions concerning Lai's activities during his last week at Applied and Mattson's alleged involvement in them.

Applied's principal authority in support of severance, *Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, is inapposite. There, a botched surgery necessitated transfusions of what turned out to be contaminated blood, leading to a malpractice action. (Id. at pp. 704-705.) The plaintiff was subject to an arbitration agreement with the surgeon and hospital defendants, but not with the co-defendant blood banks. (*See ibid*.) In dictum, the Court observed the trial court was not *required* to stay the litigation against the blood banks, but could in its discretion sever the action as to them or limit any stay to the arbitrable issues. (*Ibid.*) This is a far cry from suggesting the non-signatory blood banks had a *right* to severance. In any event, the Court did not even touch on whether the claims against them shared common issues with the arbitrable claims against the surgeon and hospital. Cases are not authority for propositions not considered or issues not presented by their facts. (*McConnell v. Advantest America, Inc.* (2023) 92 Cal.App.5th 596, 611.)

## DISPOSITION

The order denying Mattson's motion for a stay pending arbitration is reversed. The trial court's orders are affirmed in all other respects. Each party is to bear its own costs. (See Cal. Rules of Court, rule 8.278(a)(3).)

BURNS, J.

WE CONCUR:


JACKSON, P.J.
SIMONS, J.
*Mattson Technology, Inc. v. Applied Materials, Inc.* (A165378)

14

Alameda County Superior Court, No. 22CV007997, Hon. Evelio M. Grillo

Complex Appellate Litigation Group LLP, Rex Heinke and Ben Feuer; Singer Cashman LLP, Adam S. Cashman, Benjamin L. Singer, and Doug Tilley, for Plaintiff and Appellant.

King & Spalding LLP, Quyen L. Ta, Arwen R. Johnson, and Suzanne E. Nero; James Pooley PLC, James Pooley; Gibson Dunn, Blaine Evanson, for Defendant and Respondent.